## CHARLESTON.

JAMES A. GRIFFIN v. EDWIN V. RICHARDSON, ADMR. ETC.

Submitted February 11, 1919. Decided February 25, 1919.

1. DEDICATION—*Sale by Reference to Map—Right of Purchasers.*

    Where the owner lays off a tract of land into lots, streets and alleys for an addition to a town, and has a map made thereof, with reference to which he makes sale of such lots, the purchasers thereof are entitled to the use of all such streets and alleys necessary to the complete enjoyment of the lots purchased by them. (p. 445).

2. SAME—*Streets and Alleys—Acceptance—Right to Make Improvements.*

    Where the owner of a tract of real estate lays off the same into lots abutting upon streets and alleys, as shown by a plat thereof, and dedicates such streets and alleys to the public upon their natural grade and in their natural state, and such dedication is accepted by some public corporation having the right to accept the same, such public corporation has authority to make such improvements in the streets and alleys so dedicated as will make them reasonably fit for the purpose of their dedication, so that the reasonably convenient use thereof by any abutting owner is not materially affected. (p. 446).

3. SAME—*Town Addition—Map—Right of Purchasers—Change of Grade.*

    Where a tract of land is laid off into lots, streets and alleys as a sub-division to a city or town, and the owner so laying off the same makes a map thereof, and makes sale of the lots with reference thereto, the purchasers of such lots have the right to the free and unobstructed use of such streets and alleys, and where it is necessary, in order that such use shall be enjoyed, that changes be made in the natural grade of such streets or alleys, any purchaser so having the right to use the same may make such changes as are necessary for the reasonable enjoyment of the easement possessed by him, so that he does not materially affect any other abutting owner's reasonably convenient use of such streets or alleys. (p. 446).

Appeal from Circuit Court, Harrison County.

Bill for injunction by James A. Griffin against Edwin V. Richardson, administrator, etc. Decree for palintiff, perpetuating the injunction, and defendant appeals.

*Reversed, and bill dismissed.*

83 W. Va.

*Harvey W. Harmer* and *Chas. G. Coffman,* for appellant.
*Homer Strosnider* and *Fred L. Shinn,* for appellee.

RITZ, JUDGE:

In the year 1890 one William Hood laid off into town lots an addition to the town of Shinnston. A plat was made of this addition which included thereon certain streets and alleys, as well as the lots, as part thereof. These lots were sold by Hood to various parties, among the purchasers being the plaintiff Griffin and defendant's intestate, Luther H. Coffman. Coffman became the owner of three of said lots, to-wit, those numbered six, seven and eight on the plat, and Griffin likewise became the owner of three thereof, Nos. twenty-five, twenty-six and twenty-seven. Between the rear of the three lots owned by Griffin and the rear of the three owned by Coffman there was laid down on the plat an alley eighteen feet wide connecting at one end of the property of Griffin and Coffman with another road or alley referred to in the proceedings as Ravine Alley; and at the other end of their respective properties was another alley running at right angles to the alley separating the properties of the parties to this suit. Each of the parties constructed houses on the respective parcels of land owned by him, the house of Coffman fronting on a street running in front of his lots at the end farthest from the lots of Griffin, and the house of Griffin fronting on a street running in front of his lots at the end farthest from the lots of Coffman. It appears that the surface of the alley at one end of the lots of the parties, known as the Ravine Alley, at the point at which it intersected with the alley separating the properties of the parties, was about ten or twelve feet below the surface of the alley with which it so connected, so that it was impossible under the conditions that existed at the time the property was laid out to use these two alleys in conjunction. Each of the parties reached the rear of his property by coming over the alley between them, and in order to turn around was compelled to go upon his own lots, or the lots of his neighbor, the alley not being wide enough in which to turn a wagon. That part of the alley lying between the property of the parties farthest.

from the Ravine Alley, and for about one-third of the length
thereof, was paved with brick by Coffman sometime since, and
for the remainder of the distance the alley was in the same
condition, until shortly before the institution of this suit,
that it was when the property was originally laid out, that
is, it was never graded, but was simply laid out upon the
ground and left in its natural state. At the end of the alley
separating the properties of the parties next to the Ravine
Alley it is considerably lower than it is in the middle. The
addition at the point where the properties of the parties are
located is on sloping ground, Griffin's property lying on the
upper side of the alley, and Coffman's property on the lower
side thereof, and the ground sloping gradually from the front
of Griffin's lots down to the alley in the rear, and from the
rear of Coffman's lots down to the front thereof. In addi-
tion to this slanting condition of the alley it is not uniform
in its longitudinal elevation, being considerably higher at a
point located about the center of the properties of the parties
to this suit than at either end. In this ungraded condition,
except as to the portion thereof which had been paved with
brick as above stated, the parties had used this alley for a con-
siderable length of time, part of the time it being occupied
with chicken houses, and sometimes entirely closed part of
the way with other out buildings and fences. Shortly before
the institution of this suit Coffman desired to open this alley
through to the Ravine Alley, and with a view to doing this
the obstructions were removed therefrom, and he proceeded
to grade down the alley between him and Griffin, and to re-
move the material into Ravine Alley, his purpose being to
raise the grade of the Ravine Alley some six or seven feet,
and lower the grade in the alley separating his property from
that of Griffin so as to make a grade over which travel might
be conducted from one of these alleys to the other. This
involved cutting off the high part of the alley between his
property and that of Griffin about the center thereof, and
also making some cutting in the alley from a point near the
end of the present brick paving to the point where it inter-
sects with the Ravine Alley. The engineer he procured to lay
out the proposed improvement files a profile with his deposi-

tion which indicates the extent of the cutting required in order to carry out the plan. From this profile it is shown that Coffman's purpose was to cut down the alley at one point five feet, this being the deepest part of the cut, and the cut on both sides of this point gradually grew less until it tapered off to the present grade. For some of the distance the alley is only cut down a few inches, for part of the way a foot or two, and for another part of the way as much as five feet. In accordance with this plan Coffman procured men to enter upon the grading, and as soon as this was done Griffin filed this bill and procured an injunction against further work being done. Griffin in his bill alleges that the purpose of Coffman is to cut down the alley betwen them to the level of the grade of the Ravine Alley, which would make a cut some ten or twelve feet deep, and his proof is to the effect that if this was done it would destroy the access to his property from the rear thereof. The uncontradicted evidence, however, is that Coffman never had any such purpose, his only purpose being to grade the alley as above indicated, but Griffin contends that even then, while the access to his property would not be entirely destroyed, it would be affected in a substantial way, that is to say, that for part of the distance he could not get into his property as readily as he can at the present time. This is undoubtedly true as to that part where the cut will be five feet deep. It will require some grading at those points to get into the Griffin lots, and then the access thereto would not be as easy as it was theretofore, but the cutting to this extent is only over a portion of Griffin's property. For much the larger portion thereof the excavation is very much less, and for considerable parts of it there is no cut in the alley contiguous to his property, or it is inconsiderable, and Coffman's contention is that he has a right to put this alley in condition fit to be used in connection with the other streets and alleys with which it connects, so long as he does not too materially injure the premises of Griffin. Upon a hearing the court below made the injunction perpetual and Coffman having died pending the suit, his personal representative prosecutes this appeal.

There is no doubt that when a party lays off a piece of

land into lots and sells those lots to others with reference to certain streets and alleys indicated upon the plat, such purchasers are entitled to have the use of those streets and alleys. They are entitled to put them in condition so that they can be reasonably used in· connection with the properties purchased by them, and also to have them kept free from any obstructions which would prevent such use. *Cook* v. *Totten,* 49 W. Va. 177; *Edwards* v. *Moundsville Land Co.,* 56 W. Va. 43. There is no obligation upon the party who lays out the lots to grade the streets in the absence of some express agreement to that effect. 9 R. C. L. 794; 10 Am. & Eng. Ency. of Law, 428; *City of Bellevue* v. *Daly,* 14 Idaho 545, 14 Ann. Cas., 1136; *Nichols* v. *Peck,* 70 Conn. 439; *Dudgeon* v. *Bronson* 159 Ind. 562, 95 Am. St. Rep., and note at page 328.

While there is no obligation upon the party dedicating the streets and alleys in this way to put them in reasonable condition for use, he does vest the right in the parties to whom he sells the lots to so put them in such condition, and to do whatever may be necessary to that end. As between the original owners of the property and the purchasers of the lots, or the owners of the easement, the latter have the absolute right to do whatever may be necessary for the reasonably full enjoyment of the easement granted. *Hammond* v. *Woodman,* 41 Me. 177; *Cook* v. *Totten, supra; Edwards* v. *Moundsville Land Co., supra;* 9 R. C. L., 794; 10 Am. & Eng. Ency. of Law, 428; *City of Bellevue* v. *Daly, supra; Nichols* v. *Peck, supra; Dudgeon* v. *Bronson, supra; McMillan* v. *Cronin,* 75 N. Y. 474; *Prescott* v. *White,* 21 Pick. 341, 32 Am. Dec. 266. These authorities clearly establish the right of the purchasers of lots under such circumstances, as between them and the original owner, to do whatever may be necessary to put the streets and alleys in condition for use. Clearly when they were laid off this is what the parties contemplated, and while the original owner cannot be compelled to improve the same at his expense, he cannot prevent such improvement being made by the lot owners. And where a sub-division of this character has been dedicated, and such dedication has been accepted by a municipal corporation, the right of said municipal corporation to change such streets and alleys from

their natural state into a condition making them reasonably serviceable to the people having a right to use the same is beyond question. And this is true notwithstanding that by so doing the ingress and egress of some abutting lot owner may be in some measure disadvantageously affected. *Hickman* v. *City of Clarksburg,* 81 W. Va. 394, 94 S. E., 501, and authorities there cited.

But it is contended that while this right may be vested in a municipal corporation upon its acceptance of such a dedication, it does not belong to the owners of lots in such a subdivision. It is a little difficult for us to understand why, if a municipal corporation can make such a change in the natural condition of such streets and alleys, that one or more of the parties who own the easement, and are entitled to use the same, could not do the like. The action of the municipal corporation is only by reason of the fact that it has accepted the dedication, and its right to improve such streets or alleys without paying compensation to an abutting owner who may be injured thereby depends on no other ground than that it is the owner of the easement. Why then, in a case where no public authority has accepted the dedication of such easement, cannot the private owners thereof do exactly the same thing? If it is *damnum absque injuria,* in case the work is done by a public authority owning the easement, why is it any less so when such improvements are made by private persons owning exactly the same easement? It may be said that the right of a municipal corporation to make such improvements is not unlimited. It can only do such grading and make such improvements in streets and alleys thus dedicated as may be reasonably necessary to put the same in condition for the reasonable enjoyment of those entitled to their use, and this must be done so as to disadvantageously affect abutting property owners as little as possible. We think exactly the same rule applies in cases where the easement thus created has never been accepted by a public authority, but is vested in the owners of the lots. So far as our examination has gone there have been few adjudications upon this particular question, but we find in the case of *Rotch* v. *Livingston,* 91 Me. 461, that it is held that any one of the several owners of such a

road or alley as is involved here may at his own expense fit the way for convenient use, so that such improvement does not materially impede any other owner in his convenient use of the same, and this same doctrine is announced by the Supreme Judicial Court of Massachusetts in the case of *Killion v. Kelley*, 120 Mass. 47. We conclude, therefore, that Coffman had the right to improve this alley lying between his property and that of the plaintiff so long as he did not materially impede the plaintiff in the use of the easement in connection with his property.

This brings us to the question of whether or not the improvements contemplated constitute such an impediment. We have pretty fully shown their character in the statement we have before made. Griffin, it is true, will not be able to obtain access to his property as readily as theretofore, but his use of the alleys and streets of the sub-division will be very much easier than theretofore. The rule does not mean that an abutting property owner cannot be made to suffer any inconvenience at all, but only that no substantial injury may be inflicted upon him. It must be borne in mind that when these people bought these lots they knew that it was contemplated that these streets and alleys would be used for the purpose for which such streets and alleys are ordinarily used, and they also must have known, because the physical facts so informed them, that this could not be done without making some change in the then existing condition thereof, and so long as the change proposed to be made goes no further than the absolute necessity of putting them in condition fit for the use to which they are dedicated, and does not substantially prevent the use thereof by any of the abutting owners, no one has a right to complain, even though his property may not be as free of access as it would be were no changes made therein. To hold in this case that Griffin is entitled to have this alley remain in its natural condition would be practically dedicating it to his individual use, and to deny the use of it to others who are equally entitled thereto, for it is conceded that it cannot be used in connection with the Ravine Alley unless some improvement is made in it, and some change made in the grade of the Ravine Alley. We do not think that the

change proposed to be made by Coffman, as shown by the evidence in this case, is any more than Griffin must have contemplated would be made when he purchased his property, for he surely must have known that this alley lying between him and Coffman would be used in connection with the alley with which it intersects, and such could not be the case except it be improved in the manner which it was proposed by Coffman to improve it.

We are, therefore, of opinion that the court erred in perpetuating the injunction; and our order will be to reverse the decree of the circuit court and dismiss the bill.

*Reversed, and bill dismissed.*