# CHARLESTON.

HARRY L. RUDOLPH *v.* GLENDALE IMPROVEMENT COMPANY *et al.*

(No. 5736)

Submitted January 18, 1927.   Decided February 1, 1927.

1. INJUNCTION—*Lot Owner Having Only General Public Interest Cannot Enjoin Withdrawal of Dedication on Ground of Acceptance and Easements Acquired by Public.*

   Where the owner of a tract of land has laid it out for a town site into lots, streets, alleys and parks on a plat duly recorded, and has dedicated the streets, alleys and parks to public use, and sold lots with reference to the plat and dedication, but afterwards withdraws from dedication to public use the streets, alleys and parks in a division thereof, materially changing the original plan and dedication, a lot owner in the town having no more special interest in the public acceptance of the dedication than the general public, cannot enjoin the withdrawal on the ground that the dedication has been accepted by the proper municipal authority, whereby the public has acquired easements therein.   (p. 83).

   (Injunctions, 32 C. J. §§ 26, 470.)

2. EASEMENTS—*Purchaser With Reference to Plat Showing Dedicated Streets May Enjoin Closing or Obstruction Thereof Without Waiting for Municipal Acceptance of Dedication; Streets, Alleys, and Parks Dedicated at Time*

*of Purchase With Reference to Plat Are Presumed "Appurtenant" to Lot Purchased.*

Where a purchaser of such town lot has purchased with reference to such plat and dedication, without reservation, he has acquired an express private easement in all the streets, alleys and parks, and may enjoin the closing or obstruction thereof by the owner, without waiting for municipal acceptance of the dedication. All such streets and alleys are presumed to be appurtenant to his lot, and, together with the parks, were considered in the purchase of his lot as a part of the value. (p. 85).

(Easements, 19 C. J. §§ 127, 255.)

3.  SAME—*Nonuse of Easements in Streets, Alleys, and Parks, Derived by Purchase With Reference to Plat, Does Not Extinguish It.*

Mere nonuse of such easement, without adverse possession, will not extinguish it. (p. 88).

(Easements, 19 C. J. § 176.)

4.  SAME—*"Adverse Possession" of Easement in Streets From Purchase With Reference to Plat Must be Hostile at Inception, Adverse, Actual, Visible, Open, Notorious, Exclusive, Under Claim of Ownership, and Continuous for Statutory Period.*

Adverse possession of such easement must be hostile at its inception, adverse, actual, visible, open, notorious, exclusive, under claim of ownership, and continuous for the statutory period. (p. 89).

(Easements, 19 C. J. § 176.)

5.  SAME—*Injunction Against Exclusion From Use of Streets, Alleys, and Parks Dedicated by Map With Reference to Which Purchase Was Made is in Discretion of Chancellor; Denial of Injunction Against Exclusion From Use of Streets, Alleys, and Parks Does Not Prevent Law Action for Damages; Enjoining Exclusion From Alleys, Streets, and Parks Dedicated by Map With Reference to Which Purchase Was Made, Held Not Abuse of Discretion.*

Where a lot purchaser's use of such streets, alleys and parks has been denied and obstructed, and he seeks to preserve his right by injunction, the equities may be balanced and the relief granted or denied, in the discretion of the chancellor; and if denied, saving to the lot owner his right to damages at law. A case where the discretion of the chancellor in awarding relief has not been abused. (p. 90).

(Easements, 19 C. J. §§ 255 [Anno], 273, 278 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

WOODS, JUDGE, absent.

Appeal from Circuit Court, Marshall County.

Suit by Harry L. Rudolph against the Glendale Improvement Company and others for a mandatory injunction. From a decree for plaintiff, defendants appeal.

*Affirmed.*

*D. B. Evans, Erskine, Palmer & Curl,* and *Poffenbarger, Blue & Dayton,* for appellants.

*Jay T. McCamic* and *McCamic & Clarke,* for appellee.

LIVELY, JUDGE:

Harry L. Rudolph, a lot owner in division No. 3 of the Town of Glendale, Marshall County, was decreed a mandatory injunction compelling defendant, Glendale Improvement Company, to restore the lots, streets, alleys and parks in division No. 1 of Glendale, as laid out on a plat thereof by Wm. Erskine, Trustee, in 1891, which plat was duly recorded by him, and the streets, alleys and parks shown thereon were then by him dedicated to public use. The decree annulled a revocation of such dedication and change in plan made by defendant on Nov. 21, 1923 and recorded; and enjoined defendant, its agents &c., from making any change in said streets, alleys and parks as laid down on the Wm. Erskine, Trustee, plat in division No. 1. Defendant appealed.

In 1891, Daniel L. Heiskell and others conveyed a tract of about 250 acres, now included in 'Glendale, to Wm. Erskine, Trustee, on which he was authorized to lay out a town site, establish building lines, and set aside one or more parcels for parks or for depot purposes, and make sale of the lots. In that year, and by a modification made in 1892, Erskine laid off the land as a town site on the map then duly recorded, and dedicated the streets and alleys to public use, and established building lines on the lots fronting on the streets. Three parks were designated on the map, two in division No. 1, and one in division No. 2, and these parks were dedicated to the use of the public, subject to the condition that if any one of them or any part of one of them should be

used otherwise than as a public park, the title should revert. Many deeds were made to various lot purchasers by Erskine, Trustee, in which the map was referred to, reserving the minerals, and setting out the building restrictions as contained in the instrument of dedication recorded with the plat.

In April, 1904, Erskine deeded to defendant, Glendale Improvement Company, all of the unsold lots, the minerals thereunder, and his right, title and interest in and to the streets, alleys and parks; in short, he conveyed all interest and powers whatsoever he possessed in the land originally deeded to him as trustee. No lots had ever been sold either by Erskine or defendant in division No. 1, except a lot or so donated to a water company for its purposes, and this lot had been reconveyed to the grantor by the water company. The following map will make the controversy clearer.

(See accompanying map)

In 1892, Erskine deeded lot No. 11 in division No. 3, and plaintiff acquired it by deed of June 13, 1923, from Berry, the original purchaser. It lies about one-fourth of a mile from division No. 1 by the most direct route. In division No. 1 the streets, alleys and two parks had never been opened or worked on, that is, they had not been marked out on the ground except by the map. In the circular space designated as a park, trees had been planted by Erskine, but it appears to have been allowed to grow up in underbrush. The remainder of division No. 1 had been used by Erskine and defendant as his successor, for agricultural purposes, such as raising corn, for very many years prior to this suit.

In November, 1923, defendant by resolution withdrew all of division No. 1 from dedication to the public, and recorded a plat showing all the land lying west of the Baltimore & Ohio Railroad (division No. 1) to be divided into four tracts, aggregating about forty acres, with three streets or roads running from division No. 2 across both railroads to the river, one in the center, and the others at the north and south ends of division No. 1 as originally laid out. This suit was then instituted to compel defendant to restore the original plan

as laid down on the Erskine map, and to set aside and annul the relocation and changed plan made by defendant in 1923, ending in the decree complained of.

One part of the bill is predicated on the proposition that the proper municipal authority has accepted the dedication, and has control and supervision over the streets and alleys of division No. 1, by reason of the dedication and acceptance; and in support thereof certain orders entered by the County Court of Marshall County relating to franchises for public utilities in Glendale are introduced, together with another order of the County Court in 1912, directing the road supervisor to exercise control and supervision of the roads, streets and alleys of Glendale which have been dedicated to public use. A suit by the municipality has been instituted against the defendant for that purpose, and is now on appeal. The question of acceptance of the dedication by the proper municipal authority and the public use of the streets and alleys will be determined in that case. The plaintiff herein has no interest, any more than that of the general public, in that question, for his right to maintain this suit by virtue of his deed is in no way dependent upon municipal acceptance of the dedication. Therefore, he is not entitled to sue for that purpose. *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476, affirmed in *Talbott* v. *King,* 32 W. Va. 6; *Bryant* v. *Logan,* 56 W. Va. 141. The contention that these streets and alleys in division No. 1 were accepted as public streets will be considered only so far as it affects plaintiff's private right.

It is reasonably well shown that many portions of division No. 1, lying near the river, were subject to floods, especially when there were high floods, and it appears that the land was not saleable for residential purposes. Division No. 1 was traversed by two railroads running parallel to each other, one of which separated it from the other divisions laid down on the plat, and the town, a prosperous and thriving one, was built up on the east side of the Baltimore & Ohio Railroad, and away from the river land in question. Water-works and sewers were built for the town as it grew in size, and telephone and electric lines were established therein, but none

of these were ever placed on the division in question. The reason is obvious. The parks, one circular, and the other rectangular in shape, were never opened or maintained as such. A number of Carolina poplars were planted around the circular park and these grew up together with the underbrush. The planting of these poplars was the only feature on the ground which indicated the location of the circular tract. Nothing on the ground indicated the other park, and none of the streets or alleys were marked on the ground. The evidence clearly shows that underbrush had grown among the trees and in their vicinity, and that the ground was frequented by persons, especially under cover of darkness, for immoral purposes, about which there was considerable complaint.

The main contention of plaintiff's counsel, accentuated in argument and in their brief, is that when Erskine laid off the land by a plat showing lots, streets, alleys and parks, and sold lots with reference thereto, he and his successors in title could never change any of the streets or alleys laid down thereon; that all such streets and alleys are necessary and proper appurtenances to each lot, and may be used by the owner whenever he desires, whether or not the public authorities have ever accepted the dedication. The "Unity Plan" is invoked, whereby every way marked on the plat, near or remote, must be considered as appurtenant to every lot owner's property. It is insisted that we have adopted the unity plan or theory in this State, and that it is a rule of property under *Cook* v. *Totten,* 49 W. Va. 177; *Edwards* v. *Moundsville,* 56 W. Va. 43, and *Griffin* v. *Richardson,* 83 W. Va. 442. These decisions have been construed by the bar and text writers as adopting the unity rule. Vol. 1 Elliott on Roads and Streets (4th ed.), Sec. 132, and footnotes.

In *Cook* v. *Totten,* supra, the plaintiff sued to have a street opened on the plat, which was necessary for the enjoyment of his property, and asked for a mandatory injunction compelling the opening of the street, which the grantor had refused to do. The parties went to proof on whether the street was necessary to plaintiff's enjoyment of his property,

and the court found for plaintiff. This Court disposed of the case by saying that the evidence was conflicting, and it could not say that the trial court was clearly wrong, and therefore would not disturb the decree. The unity rule was then discussed in the opinion, but the syllabus, which is the law of the case, says the landowner who lays off such lots, streets and alleys cannot withhold from a lot purchaser the use of the streets and alleys until the dedication is accepted by proper public authority, but that such purchaser is entitled to the immediate use of all such streets and alleys *as are necessary to the complete enjoyment of his property;* and that the laying off and selling of lots with reference to the plat carries with each lot sold as appurtenant thereto the right to use of the easement in such streets and alleys *necessary to the enjoyment and value of such lots.* The same qualification is found in *Edwards* v. *Land Company, supra,* and it appears that the street in question in that case actually abutted plaintiff's lot. Likewise the same qualification is found in point 1 of the syllabus in *Griffin* v. *Richardson, supra.* However, there are strong expressions in the two cases first named which would favor the unity rule if a case solely presenting that question (without the added present use of the street for full enjoyment of the lot) was to be decided. The great weight of authority sustains the unity rule; and the reasons for its adoption are very persuasive. See Elliott on Roads & Streets, (4th ed.) Vol. 1, Sec. 132, p. 157, a portion of which, as it appeared in an earlier addition of the same work, is cited with approval in *Cook* v. *Totten, supra.* In *Mason* v. *Wall,* 96 W. Va. 461, the unity rule was invoked by plaintiff, but the "boom town" in which his property was located had failed, the promoting company had become insolvent, and the land which defendant owned and which he had fenced, including some of the streets laid down on the plat, had been used for farming purposes, and was fit for no other purpose. The reason for the unity rule had, under such conditions, disappeared, and equity would not permit its enforcement.

Defendant contends that it would be inequitable to enforce the unity rule in the instant case, because the injury to plaintiff is slight, if any, (and there is very little shown in the evidence), that it is technical and not substantial or irreparable in nature, and is fully remediable in an action at law; and that a court of equity, in the exercise of sound discretion, should have denied the relief. Defendant invokes the equitable doctrine that the inconvenience and injury to it by requiring it to maintain these unsalable lots as laid off in division No. 1, thus losing forty acres of land, interspersed by imaginary streets and alleys, is disproportionate to the alleged injury to plaintiff to whom no benefit whatever would accrue. Defendant also alleges in its answer and contends that if plaintiff's immediate predecessor in title obtained a private easement in the ways and parks by his deed in 1892, it was lost to him, and therefore to his vendee, the plaintiff, in 1923 by abandonment and non claim thereto and by adverse possession of defendant from 1904, when the latter purchased and took possession of the lots, streets, alleys and parks from Erskine, Trustee. We will consider these two propositions.

On the claim of abandonment and non user, it is quite generally held that mere non user will not extinguish the easement. *Wooldridge* v. *Coughlin et al.,* 46 W. Va. 345, 347; *Savannah* v. *Barnes,* 148 Ga. 317, 9 A. L. R. 419, where there is an extended annotation citing the many recent cases; *Moyer* v. *Martin,* 101 W. Va. 19; 19 C. J., Section 153, p. 943.

Nor can we see much strength in the contention of adverse possession of Erskine and defendant. The adverse possession necessary to extinguish an easement of right of way by express grant must be wholly inconsistent with the right to enjoy the easement and amount to a disseisin or ouster. *Parker* v. *Swett,* 180 Pac. (Cal.) 351; *Perry* v. *Wiley,* 285 Ill. 25; *Seymour Water Co.* v. *Lebline,* 195 Ind. 481, where it is said that in order to effect an extinguishment of such right of way there must be an absolute denial of the right to the easement, and the occupancy by the servient owner must be so adverse and hostile that the owner of the easement could

have maintained an action for obstructing his enjoyment of it. And in *Marshall* v. *Pfeiffer,* 145 N. E. (Ill.) 411, it was held that to constitute adverse possession of platted streets the possession must have been hostile in inception, adverse, actual, visible, open, notorious, exclusive and continuous, and under claim of ownership; and that the ''Doctrine of estoppel in pais held not to apply as against town lot owners suing to enjoin obstruction of platted streets by adjoining owners, where the possession and use of the latter, though long continued, was suffered by plaintiffs only until changing conditions required opening of streets.'' In the instant case Erskine, Trustee, continued in possession of the lots, streets, alleys and parks at the time the map and dedication were filed. There was no change in the physical aspect of the property, except that trees were planted by him around the circular park. It remained as when dedicated—an open field. His possession was not adverse, and was consistent with his dedication. As was said by Judge BRANNON in *Wooldridge* v. *Coughlin, supra,* ''In almost every conceded right of way, whether by grant or necessity, there is actual possession of the land subject to such right of way. *Arnold* v. *Stevens,* 35 Am. Dec. 305; *Gray* v. *Bartlett,* 32 Am. Dec. 208, note.'' Nothing was done by defendant upon its succession to title in 1904 or thereafter which would indicate a change in the legal status. The land was continued as town lots on the assessment books for taxation, and numerous deeds referring to the Erskine plat were made up to and after the withdrawal of dedication by resolution in 1923. The poplar trees were cut about 1922. We do not think it can be maintained that the holding of the streets, alleys and parks under such circumstances, although in part farmed for grain, would constitute adverse holding. It must be clear that title to land or to an easement by express grant has been lost by adverse holding. The cutting of the trees and withdrawal of the streets, alleys and parks from public dedication, together with change of plat, were acts adverse to plaintiff's express easement, but he promptly acted by this suit before the right was lost by delay.

On the proposition that it would be inequitable to award
the relief sought because the loss and inconvenience to de-
fendant is disproportionate to the gain and technical damage
to plaintiff, and therefore should be refused in equity, we
have had more difficulty.   That equity will entertain bills to
protect easements and servitudes by grant, and the due en-
joyment thereof by the grantees cannot be questioned.   And
if the injury done is capable of being ascertained and com-
pensated at law, and inconvenience and loss to the other party
would be serious, generally the courts will dismiss the bill,
reserving to plaintiff his right to proceed at law.   *Berkeley* v.
*Smith*, 27 Grat. 892.   This rests in the discretion of the chan-
cellor.   Can we say the lower court has abused its descretion?
It is not clear that defendant will be greatly injured by main-
taining the status quo as laid down  on  the  Erskine  plan.
While the lots as so laid down have not been sold, it does not
appear that they cannot be sold, either as lots or in blocks.
The price often prevents a sale.   It does appear that it is
impracticable to sell the ground for factory sites interspersed
by the present streets and alleys.   On the other hand, it would
be difficult to measure the damages to plaintiff.   His use of
the parks and these ways to and from them for the years to
come would be difficult to ascertain.   He says he has been
damaged $500.00 by the simple fact that the trees have been
cut.   A suit for damages under the facts here developed would
not be an adequate remedy.   And to force a lot owner to his
action of damages for the closing or obstruction of streets
and the elimination of a plan of streets, alleys and parks,
under which he bought, although all of them might be dis-
tant from his property, would materially modify the unity
plan doctrine under which all streets and alleys are consid-
ered as appurtenant to the lot owner's property, "for they
begin at his property and extend in a net work over all the
land platted and dedicated."   *Wolfe* v. *Town*, 133 Ind. 331.
It appears that the municipality has attempted to accept the
Erskine dedication, and it may be reasonably inferred that
an early opening of the streets, alleys and parks sought to be
closed, is desired for the use of inhabitants.   On the whole,

we cannot say the trial judge has abused his discretion in this regard.

The decree will be affirmed.

*Affirmed.*