## CHARLESTON.

Nell P. Higgins *et al. v.* Suburban Improvement Company *et als.*

(No. 6522)

Submitted January 21, 1930. Decided February 4, 1930.

*Nesbitt, Goodwin & Nesbitt,* for appellants.
*Howard & Howard,* for appellees.

532

LIVELY, PRESIDENT:

The plaintiffs seek an injunction to restrain the Suburban Improvement Company, John A. Howard, its president, and George Renforth, its employee, from erecting a structure in a fifty-foot street abutting the rear of plaintiffs' property and from obstructing plaintiffs' use of the street as a roadway. On March 7, 1929, the circuit court dissolved a temporary injunction which it had granted and dismissed plaintiffs' bill. From the decree of March 7, 1929, plaintiffs appeal.

There is little dispute of the material facts. The appeal presents solely questions of law, based on the following facts:

In 1899, Elizabeth Prather, the owner of a portion of the John Reid farm, between three and four miles east of the city of Wheeling, West Virginia, platted a portion of this land into thirteen lots, each facing about eighty feet on the National Road and running eastwardly up the hill a distance of two hundred and fifty feet. The most northern of these lots was Lot No. 12. The lots were numbered consecutively toward the south along the National Road from No. 12 to No. 24, inclusive. Adjacent to the rear of these lots on the hillside and paralleling the National Road, Mrs. Prather platted a fifty-foot street. She connected this street with the National Road by two streets—one, a twenty-four foot street, between Lots No. 20 and 21, and the other, a thirty-foot street, at the extreme southwest corner of the platted land. In the plat, filed and recorded, she dedicated these streets to public use.

The dedicated fifty-foot street has not actually become a roadway. The terrain rose so steeply to the east from the National Road and was so precipitous that south of the northeast corner of Lot 15, the grade was such as to make it impossible for vehicular traffic to use the platted street in traveling from Lots 12, 13 and 14 southwardly to the other lots of the addition. There is no evidence that the plaintiffs used the street as such, or that there was an acceptance of the dedication by the public or that the street was opened: it has remained a street on paper. A copy of the map showing the lots and dedicated streets will visualize the controversy.

Mrs. Prather, between 1899 and 1903, disposed of her entire portion of the Reid farm, including the platted addition. She conveyed Lot 12 to Maria L. Bailey, one of plaintiffs' predecessors, in 1899. Mrs. Bailey continued to own the property until 1910 when she sold it to Martha N. Rownd, and in 1925, Nell P. Higgins, one of the plaintiffs, purchased it from Martha N. Rownd. In 1900, Mrs. Prather sold Lots 13 and 14, as shown on the recorded plat, to W. H. Metzner, but in the Metzner deed she dedicated to the public use off Lot 13 a strip of twenty feet in width extending from the National Road to the fifty-foot street and a triangle twenty feet wide running to a point at the northeastern corner of Lot. 14. Metzner still owns his property and has resided there since its purchase. In 1903, Mrs. Prather conveyed to Agnes Jane Howard, by metes and bounds, all of her remaining land of the Reid farm, including all the streets shown on the plat, with special warranty as to the streets. That conveyance did not include the twenty-foot street running from the National Road over Lot 13 back to the fifty-foot street.

Mrs. Bailey constructed a substantial residence on Lot 12, and at the rear thereof, on the southern corner, she built a stable for two horses and a carriage. The stable faced the hill, and its doors opened onto the fifty-foot street. Mrs. Bailey reached her stable by driving through Lot 12, along the north side thereof to a point in the rear of her house, thence southwardly across her lot, thence eastwardly along the northern line of Lot 13 until she reached the fifty-foot street, thence into the fifty-foot street and backed into her stable. Later, after Metzner purchased Lots 13 and 14, she used the rear portion of the twenty-foot street and the triangle which Mrs. Prather had dedicated to public use in her deed to Metzner. The stable was removed after the Rownds took possession of the property (in 1910), and in its stead Mrs. Rownds erected a playhouse for her little girl, who used the street as a playground. The playhouse stood there, encroaching on the fifty-foot street, until 1925 when Mrs. Rownd sold to one of the plaintiffs, and then the defendant Howard "picked this house up bodily and pushed it over in Higgins' property." At the same time, Howard placed

a fence across the rear of the Metzner property and also across the rear of Higgins' property. Metzner and Higgins, on advice of counsel, tore down the fence. In 1928, Mrs. Howard conveyed all of her property mentioned herein to the Suburban Improvement Company, a holding company for her, of which her husband, John A. Howard, is president. In 1928, the Suburban Improvement Company began the construction of a stable in the fifty-foot street, back of Lot 12. To prevent this construction, the plaintiffs asked for the injunction.

Soon after Mrs. Howard's possession began in 1903, she placed valuable improvements on her land, and she later blocked the twenty-four-foot street, the thirty-foot street, and the southern portion of the fifty-foot street. In 1908 and 1909, she built a cut-stone entrance, including a stone wall approximately fourteen feet high, and a gateway fronting on the National Road at the place shown on Mrs. Prather's plat as a twenty-four-foot street. At the same time, she built a stone stairway and established an iron gate at this entrance. She also constructed a massive stone wall along the line of the National Road from the northwestern corner of Lot. No. 15 to the extreme southwestern corner of the plat, thereby closing the western entrance to the thirty-foot street, and from the gateway, she built a brick and concrete road, crossing Lots Nos. 21 and 22 and winding eastward on Lots No. 32 and 24, winding and ascending with the contour of the land, and crossing the fifty-foot street near its southern extremity. In 1913 and 1914, Mrs. Howard built two apartment houses, one of which is entirely situate upon a portion of the thirty-foot street and the other is entirely upon the extreme southern portion of the fifty-foot street. In 1913 and 1914, Mrs. Howard constructed what is designated on a map as ''The Present Howard Place Driveway (Concrete)'', which crossed the fifty-foot street approximately sixty feet from the southeasterly corner of Lot 13 (owned by Metzner) and approximately two hundred and twenty feet from the southern line of plaintiffs' property. There is no evidence that the plaintiffs' predecessors had ever complained of Mrs. Howard's acts in making these improvements which obstructed these dedicated streets.

One of the few controverted facts concerns a fence in the rear of Lots 12, 13 and 14. The defendant Howard testified that in 1903 there was a wire fence in the rear of these lots; that the fence extended across the twenty-foot street, thus shutting off that street; and the fence was sufficient to retain within the bounds of the property purchased by Mrs. Howard a herd of cattle belonging to one Dimmey; that he repaired the fence around the whole tract including that part of it which is in the rear of Lots 12, 13 and 14, about "the middle of the twenty-year period," presumably meaning the period 1903 to 1928. Metzner, his son and Stroebel ( a neighbor), however, stated that there was no wire fence on the rear of Metzner's lot in 1903 and that they knew of none except the one which Howard had erected in 1925. Since the fence, if there, was the same fence which existed at the time Mrs. Prather dedicated the fifty-foot and twenty-foot street and triangle, it would have little effect on plaintiffs' right to the easement in the two streets and triangle, necessary to the enjoyment of their property. *Rudolph* v. *Improvement Co.,* 103 W. Va. 81.

The physical condition of the fifty-foot street has changed little since its dedication. Metzner has planted trees and flowers in it, where he and his wife would frequently rest in the summer and where his son and the son's companions played. Howard had done some grading in 1925, from the twenty-foot street onto the fifty-foot street in controversy, by which automobiles could be taken from the twenty-foot street onto the disputed property.

By agreement of counsel, the memoranda of opinion by the learned chancellor below dismissing the bill were made a part of the record. From these memoranda it was held that plaintiffs were estopped to deny defendant's title to the fifty-foot street because Mrs. Howard's color of title had been perfected by adverse possession. The court adopted the rule in *Point Mountain Lumber Co.* v. *Lumber Company,* 71 W. Va. 21, that adverse possession of a part of a tract by one holding under color of title extends to all the land comprehended in his title papers. The question is, does that principle of law apply in the instant case?

From the detailed facts it appears that a physical barrier —a precipitous topography—prevented any continuity of the fifty-foot street between Lots 12, 13 and 14, and those parts of the platted streets which Mrs. Howard had used in the construction of her concrete road and apartment house. It is true, that the street had not been used by vehicles from 1910, up to 1925, but mere non-use of an easement will not extinguish it. *Rudolph* v. *Improvement Company*, 103 W. Va. 81, 137 S. E. 349, and cases cited therein; *Addison County* v. *Blackmer*, ...... Vt. ........., 143 Atl. 700; *Arlington Realty Co.* v. *Keller*, 147 A. 437, (N. J. 1929). But, the land between those points (southerly extremity of Lot 14 to the thirty-foot street) was impracticable as a street when, in 1899, Mrs. Prather dedicated it as such, and the parties have stipulated that it is now so. Nevertheless, Mrs. Prather dedicated it and thus created an easement for the benefit of Lots 12, 13 and 14. In the following year, she dedicated a twenty-foot street and a triangular strip, which she took from Lot 13. Did she, as defendant contends, do this so that Metzner could get to the rear of his lot? This does not seem tenable in view of the fact that Metzner was purchasing Lot 13. What reason then was there for her act? From a preponderance of the evidence Mrs. Bailey had used a portion of Lot 13 to reach the fifty-foot street and her stable, situate in the rear of Lot 12. It would seem reasonable, therefore, to infer that the dedication of this twenty-foot road and the triangular strip was caused by her recognition of the fact that the easement which she had created for Mrs. Bailey would be of no benefit to her unless she (Mrs. Bailey) was provided some means of access to the fifty-foot street; and, further, she wanted the public to have access to the rear of Lots 12, 13 and 14. The deeds state that the strips (twenty-foot and triangle) "are hereby dedicated to the public use as highways forever." In what manner then has the owner of Lot 12 lost this property right which two real estate dealers, Miller and Ferrell, say is of much value to her home? It is true that "adverse possession" of an easement in streets may, under conditions, extinguish the easement. *Rudolph* v. *Improvement Company*, 103 W. Va. 81. The Court in that case stated: "The adverse posses-

sion necessary to extinguish an easement of right of way by express grant must be wholly inconsistent with the right to enjoy the easement and amount to a disseisin or ouster.'' See *Morris* v. *Daniel,* 183 Ky. 780, 210 S. W. 668; Jones, Easements, page 694. Do the facts in this case come within the purview of this test? We think not. Until 1925, when Mrs. Howard began to construct the stable which brought about this litigation, she had done nothing ''wholly inconsistent with plaintiffs' right to enjoy the easement.'' Every act committed by her to perfect her title by adverse possession was done upon portions of the platted addition not accessible to the owners of Lot 12 by way of the fifty-foot street. We cannot say that the plaintiffs or their predecessors had right to complain until 1925. Suppose the plaintiffs' predecessors had complained at the time Mrs. Howard blocked the several streets and had invoked the unity rule. They would then have had no standing in equity because the streets blocked by Mrs. Howard were not necessary to the complete enjoyment of their property. *Cook* v. *Totten,* 49 W. Va. 177, 38 S. E. 491; *Griffin* v. *Richardson,* 83 W. Va. 442, 98 S. E. 523. We think this case falls within the principle on which *Kaminsky* v. *Barr,* 106 W. Va. 201, was decided. In that case the plaintiff asked for an injunction to prevent the adjoining property owner from erecting a brick building within a fixed distance from the street line, said line having been fixed by covenants in the deed conveyed to property owners in the block in which plaintiff and defendant owned property and in which the construction complained of was taking place. A temporary frame building had stood for the greater part of the time from 1918 to 1927 on the defendant's lot in the very position where defendant proposed to erect the brick building, and the porches of several houses extended into the restricted land. The defendant contended that the restriction should not be enforced against him because of violation of the same restrictive covenant by plaintiff and others and because of laches on the part of the plaintiff. The court held that ''the fact that plaintiff did not undertake to force the removal of the temporary frame building did not convict the plaintiff of laches,'' thereby approving the rule stated in *Rogers* v.

*Zwolak,* 12 Del. Chancery 200, as follows: "That an owner does not complain of immaterial violations of a restriction does not preclude him from enforcing the restriction against an owner whose violation does materially affect him, or, in other words, such acquiescence does not constitute abandonment, so long as the restrictive covenant remains of any value."

In the *Lumber Company* case, relied upon by the lower court, it was stated that to extend the adverse possession of a part of the land to the boundaries in the title papers, such possession had to be exclusive. That is not the situation in this case. A portion of the disputed land had been occupied, until 1925, as a playhouse, and the occupants of the abutting lots had used the property for purposes other than street pur, poses. In the instant case, there is an easement, created by dedication, and running with the land (Thompson, Real Property, p. 380). It is an easement which was necessary for a full enjoyment of the property, though not necessary as a part of a net work over all the land platted. In our opinion it is one of value as a means of ingress and egress to the rear of plaintiff's property. Its use may not be practical for vehicular traffic, but from the defendant Howard's testimony, we learn that the defendant Renforth uses it for parking purposes, after entering into the fifty-foot street by way of the twenty-foot road. True, the distance to which vehicular traffic is enabled to go may not be great, but it is as great now as it was when Mrs. Prather created it. And further, until 1925, as nothing had been done by Mrs. Howard which was wholly inconsistent with the use of the easement, we cannot say that the plaintiffs are guilty of laches. Insofar as the temporary injunction may prevent defendants from exercising control over and obstructing the fifty-foot street south of the driveway across it constructed by Mrs. Howard about the year 1915, and the twenty-foot roadway between Lots 20 and 21, extending from the National Pike to the fifty-foot street, and the thirty-foot way south of Lot 24 and bordering thereon, likewise extending from the National Pike to said fifty-foot street, the said temporary injunction will not be perpetuated; but so far and so far only as the said injunction inhibited defendants from erecting buildings, fences or other obstructions.

in that portion of the fifty-foot street lying back of Lot 12 (plaintiffs' property) which obstruct ingress and egress from their said property to the said fifty-foot street and free use of the same and the twenty-foot way and triangle dedicated to the public use by Mrs. Prather in 1900, the said injunction will be perpetuated. Costs in this Court will be awarded to appellants, and the cause remanded.

The decree of the lower court will be reversed; the bill and injunction reinstated and the latter modified and perpetuated.

*Reversed; bill and injunction reinstated; injunction modified and perpetuated.*