550 S.E.2d 653

William Grant WALLS and Ruby M. Walls, Husband and Wife, and Jennings Watts, Jr., and Deborah L. Watts, Husband and Wife, Plaintiffs Below, Appellees,

v.

Chester DeNOONE and Patricia DeNoone, Defendants Below, Appellants.

No. 29062.

Supreme Court of Appeals of West Virginia.

Submitted June 12, 2001.

Decided July 2, 2001.

Donald P. Cookman, Esq., V. Allan Riley, Esq., Riley & Cookman, Romney, West Virginia, Attorney for Appellees.

John David Judy, III, Esq., Judy & Judy, Moorefield, West Virginia, Attorney for Appellants.

PER CURIAM:

This is an appeal by Chester DeNoone and Patricia DeNoone, his wife, from an order of the Circuit Court of Hampshire County, which declared that they were not entitled to use a roadway which ran from their property over an easement to a public road, State Route 29. In reaching the decision, the circuit court concluded that the easement, which had previously been enjoyed by the appellants' predecessors in interest, had been terminated by abandonment and adverse possession.

On appeal, the appellants claim that both the findings and conclusions made by the circuit court were erroneous and that consequently the ruling was erroneous. They also claim that the court failed to join an indispensable party, and that the court erred in assessing them attorney fees and costs.

## I.

### FACTS

On May 8, 2000, Dennis G. Largent, II, sold one of the appellants, Patricia A. DeNoone, two parcels of real estate located in Hampshire County. In the deed transferring the parcels, Mr. Largent also conveyed to Patricia A. DeNoone a 30–foot–wide, non-exclusive, right-of-way which ran from the property conveyed to State Route 29. The right-of-way was non-exclusive in that Mr. Largent, in granting the right-of-way, reserved to himself the right to use the same right-of-way to maintain access to certain property which he retained. The right-of-way ran over real estate owned by the appellees in this proceeding, William Grant Walls and Ruby M. Walls, his wife, and Jennings Watts, Jr. and Deborah L. Watts, his wife.

Following the DeNoone purchase of the real estate, William Grant Walls and his wife, and Jennings Watts, Jr., and his wife apparently learned that the DeNoones intended to subdivide, or develop, the real estate, and on July 17, 2000, they instituted the present action in the Circuit Court of Hampshire County against the DeNoones. They did not join Dennis G. Largent, II, as a party defendant. In their complaint, they alleged that the right-of-way which the DeNoones claimed was not a right-of-way for the benefit of the DeNoone property but was, instead, a right-of-way to provide access to a ceme-

tery which was located between State Route 29 and the DeNoone property. They also asserted that the right-of-way was not 30 feet wide and that it could not be used to service a subdivision since such a use of a roadway less than 30 feet in width would violate Hampshire County Subdivision Ordinances. They prayed that the court declare that the subject roadway was not a right-of-way over their property for the benefit of the De-Noone real estate, and they also prayed that the DeNoones and their successors be enjoined from using it for access to their property. Lastly, they sought attorney fees and costs.

The DeNoones filed an answer and various documents, and by agreement of the parties, the matter was tried by the Circuit Court of Hampshire County sitting without a jury. In the course of the trial, extensive evidence was introduced relating to the prior ownership of the DeNoone real estate, and also the real estate owned by William Grant Walls and his wife, and Jennings Watts, Jr., and his wife.

The evidence showed that the right-of-way had been used as a means of ingress and egress to what became the DeNoone property from the late 1800's until sometime in the 1950's. In early 1955, Robert S. Weaver and Freda Weaver purchased what became the DeNoone property. The Weavers apparently used it only for recreational purposes and did not reside upon it full time. At some point in the late 1950's, a gate was placed across the right-of-way, apparently at the entrance to the DeNoone property. There was substantial evidence that after the gate was erected, Mr. Weaver would use what became the DeNoone property on weekends, but that he would stop his vehicle at the gate and get out and walk the rest of the way by either climbing the gate or walking around it. This continued until Mr. Weaver became sick and was hospitalized in approximately 1979 or 1980. Subsequently, Mr. Weaver died, and the heir of his widow, one Catherine L. Levi, sold the what became the DeNoone property to Dennis G. Largent, II, on September 16, 1993. Mr. Largent, when the property was being shown for sale, observed a realtor traveling on the right-of-way on

several occasions. It appears that Mr. Largent timbered what became the DeNoone property and was sued by Mr. Watts in approximately 1995 for causing damage to the roadway during the timbering operation. Mr. Largent prevailed in that lawsuit. The testimony of Mr. Largent was that Mr. Watts did not make a claim in 1995 that he, Largent, did not own the right-of-way or have a right of access on it from State Route 29. Mr. Largent also testified that he was familiar with the gate at the boundary of what became the DeNoone property, and that he, himself, had replaced the existing gate with a gate of his own.

William Grant Walls, one of the parties who brought the action, testified that he purchased his property in 1974, and that he had previously observed Mr. Weaver going in and out of what became the DeNoone property, but that Mr. Weaver would park his vehicle at a gate and would proceed on foot. Mr. Weaver died in 1981, and Mr. Walls never saw Mr. Weaver's widow on the property again. Sloan Miller, whose family had previously lived on what became the De-Noone property, testified that his family had in the past used the road in question for access to their home, but that he had driven down the roadway and found the gate locked in approximately 1967 and in approximately 1980. Timothy C. Walls testified that there were two gates on the roadway near the boundary of what became the DeNoone property. The first gate was locked. He indicated that between the two gates there were weeds and grass growing, but no trees. He was not certain who had put up the gates, whether it was Mr. Weaver, the previous owner of the DeNoone property, or a Mr. Buckbee, a prior owner of one of the parcels over which the right-of-way passed. Eugene Bennett Buckbee, Sr. testified that his father had sold Mr. Walls the Walls property in either 1975 or 1976. Mr. Buckbee remembered gates blocking the right-of-way and remembered seeing Mr. Weaver, the prior owner of what became the DeNoone property, driving from State Route 29 and parking his truck at a gate and climbing over it to get into his property instead of "having to unlock it." Mr. Buckbee never saw Mr. Weaver drive through the gate. He had seen, howev-

er, a Mr. Lewis drive through both gates and acknowledged that Mr. Lewis had apparently had a key. Jennings L. Watts, Jr. testified that there was a gate across the right-of-way. Belmont Kline testified that he had hunted on the DeNoone property in the past, and that he had driven across the roadway from State Route 29 to the locked gate and that he had crossed the gate or fence and continued on into what became the DeNoone property. Mr. Kline's family had previously owned it, or a portion of it, and had used the right-of-way to obtain access to it. Glen Haines testified that there was a gate across the road. Mark Haines testified that the road- · way had always existed as a roadway. Dennis G. Largent, the father of the Largent who sold Patricia DeNoone the DeNoone property, testified that he had observed Mr. Weaver traveling to the gate and through the gate to get onto what became the DeNoone property. He specifically testified that Mr. Weaver would drive to the old house on what became the DeNoone property, and stay at the house on weekends. He saw Mr. Weaver drive through the gate "many a times." Finally, Chester DeNoone testified that he had actually traveled over the right-of-way through the gate prior to the time that his wife's predecessor, Dennis G. Largent, II, had purchased the property from the Weaver heirs.

At the conclusion of the trial, the court found that in the late 1950's, two gates were placed across the right-of-way while what became the DeNoone property was owned by Robert S. Weaver and Freda Weaver. One of the gates was locked and, according to the court, prevented access to what became the DeNoone property from the late 1950's until 1993 when the real estate was purchased by Dennis G. Largent, II. The court further found that after installation of the gate, the Weavers ceased to use the right-of-way for vehicular access to what became the De-Noone property and that this lack of vehicular use continued from the late 1950's until 1993 when the property was purchased by

Dennis G. Largent, II. The court also made extensive findings relating to the use of the roadway prior to the erection of the gate in the late 1950's.

The court concluded that based upon the facts, a prescriptive easement or right-of-way had been established for ingress and egress to what became the DeNoone property, but that the easement was extinguished by abandonment and "by adverse possession of the right-of-way ten (10) years after erection of the Buckbee gate, sometime in the 1960's." The court further found that following the erection of the gate, what became the De-Noone property had only been accessed by the roadway beginning in 1993 when the property was purchased by Dennis G. Largent, II, and that because he had not used it for 10 years, he had failed to reestablish the easement.

Based on these findings of fact, the court ruled that the DeNoones did not have a right-of-way of ingress and egress by vehicular traffic to what became the DeNoone property over the roadway in question. The court then, without making reference to "vehicular" access, proceeded to enjoin them and their successors from using the roadway for access to what became the DeNoone property.[1] Lastly, the court ordered the De-Noones to pay the plaintiffs' costs and attorney fees. In the final order, the court did not address the question of the width of the (former) right-of-way or the question of whether the width was sufficient under the Hampshire County Subdivision Ordinances to provide lawful access to a subdivision.

## II.

### STANDARD OF REVIEW

This Court has stated in Syllabus Point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), that: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to find-

---

[1]. Technically, the court ruled that the right-of-way had been extinguished for vehicular use, and did not rule that it had been extinguished for pedestrian use. The court, however, further broadly enjoined the DeNoones from using the right-of-way, without mentioning "vehicular" use. In so doing, the court as a practical matter terminated the DeNoones' right to use the right-of-way in any manner.

ings of fact under a clearly erroneous standards; conclusions of law are reviewed *de novo*."

## III.

## DISCUSSION

On appeal, the DeNoones claim that the circuit court erred in holding that the right-of-way to their property had been abandoned and had been terminated by adverse possession.[2]

■ This Court has indicated that the burden of proving the termination of an easement, either by abandonment or by adverse possession, rests upon the party who claims that the easement has been terminated. *Strahin v. Lantz*, 193 W.Va. 285, 456 S.E.2d 12 (1995). *See, Keller v. Hartman*, 175 W.Va. 418, 333 S.E.2d 89 (1985); and *Berkeley Development Corporation v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976).

■ What constitutes abandonment is discussed in *Strahin v. Lantz, supra*. The ultimate conclusion reached by the Court was that: "Abandonment of an easement by prescription is a question of intention that may be proved by nonuse combined with circumstances which evidence an intent to abandon the right. It is the burden of the party asserting the absence of an easement by prescription to prove abandonment by clear and convincing evidence." Syllabus Point 2, *Strahin v. Lantz, supra*. In the same case, the Court indicated that evidence of non-use of an easement, without more, is insufficient to establish the extinguishment of an easement by abandonment requires a clear showing of an intention by the holder of the easement to abandon his rights. The Court said: "This rule is keeping with public policy considerations which revere vested property rights. Courts should not interfere with the rights of an owner of a prescriptive easement absent a clear showing that the owner does not intend to exercise his rights in the future." *Strahin v. Lantz, supra* at 288, 456 S.E.2d at 15.

In far older cases, the Court indicated that the mere fact that the holder of an easement has made a detour around some obstruction in a right-of-way does not extinguish or affect the existence of the right-of-way. *McNeil v. Kennedy*, 88 W.Va. 524, 107 S.E. 203 (1921); *Walton v. Knight*, 62 W.Va. 223, 58 S.E. 1025 (1907).

■ In the present case, the trial court concluded that the intention to abandon the right-of-way was clearly and convincingly established by virtue of the fact that the roadway leading to what became the DeNoone property "was not used for vehicular access to the property from the period of the 1950's until 1993," and the fact that "the intention to abandon the prescriptive right-of-way to Robert S. Weaver and Freda Weaver was evidenced by the testimony presented that, at times, Mr. Weaver was seen parking his vehicle at the Mount Union Cemetery, and then climbing over the gates to walk onto the ... real estate."

In reviewing the evidence relating to the use of the right-of-way, between the 1950's and 1993, this Court finds that the trial court's conclusion that the roadway was not used for vehicular access to what became the DeNoone property from the 1950's until 1993 is not supported by the evidence. The evidence shows that Mr. Weaver was repeatedly seen driving over a substantial section of the right-of-way to what became the DeNoone property, even after the gate was erected in the 1950's. And, as this Court reads the evidence, there is some suggestion the gate was virtually at the edge of what became the DeNoone property. By thus driving the length of the right-of-way to the edge of his property, Mr. Weaver did, under any interpretation of the evidence, use a substantial portion of the right-of-way, if not all, right up to the property line, for vehicular traffic to what became the DeNoone property. Additionally, there was evidence that others had been seen using the entire right-of-way between the 1950's and 1993. For instance, Eugene Bennett Buckley, Sr., testified that he had observed a Mr. Lewis drive over the

2. They specifically claim that the findings of fact were contrary to the evidence and that the court misunderstood the law as it relates to abandonment and adverse possession as it relates to the termination of rights-of-way.

right-of-way through the gate and onto what became the DeNoone property. Further, Dennis G. Largent testified that he had observed Mr. Weaver traveling to the gate and through the gate to get to what became the DeNoone property from State Route 29, and that Mr. Largent had seen Mr. Weaver drive through the gate "many a times." Finally, Chester DeNoone testified that he had actually traveled on the right-of-way through the gate prior to the time that Dennis G. Largent, II, had purchased what became the DeNoone property.

A review of the evidence also shows conclusively that the right-of-way was used at least to provide some pedestrian access to what became the DeNoone property even after a gate was erected. Finally, no one witness apparently constantly observed the roadway, and although several indicated Mr. Weaver would park at the gate and walk into what became the DeNoone property, the fact that he was not observed by them driving in does not conclusively show that he did not drive in.

As indicated in *Strahin v. Lantz, supra,* for an abandonment of a right-of-way to occur, there must be a clear showing that the owner does not intend to exercise his rights in the future.

In the present case, the Court believes that the facts do not clearly show that the various owners of the DeNoone property intended to give up their rights, and consequently the Court concludes that the circuit court erred in holding that there was an abandonment. Clearly, the right-of-way was used for both pedestrian property and vehicular traffic after the gate was erected. The only dispute is whether there was vehicular passage over the final few feet of the easement into what became the DeNoone property, and the evidence on that point is conflicting.

■ In addition to holding that the easement was extinguished by abandonment, the circuit court found that the easement was extinguished by adverse possession.

■ This Court has indicated that a private easement may be extinguished by adverse possession wholly inconsistent with the use of the easement. *Bauer Enterprises, Inc. v. City of Elkins,* 173 W.Va. 438, 317 S.E.2d 798 (1984); *Higgins v. Suburban Improvement Company,* 108 W.Va. 531, 151 S.E. 842 (1930); *Rudolph v. Glendale Improvement Company,* 103 W.Va. 81, 137 S.E. 349 (1927).

■ In Syllabus Point 1 of *White v. Lambert,* 175 W.Va. 253, 332 S.E.2d 266 (1985), the Court stated the elements of adverse possession which must be proven to extinguish an easement by adverse possession. In that syllabus point, the Court stated:

"One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title." Syllabus Point 3, *Somon v. Murphy Fabrication & Erection Co.,* 160 W.Va. 84, 232 S.E.2d 524 (1977).

In the present case, there is conclusive evidence that whoever erected the gate at the edge of what became the DeNoone property did not take exclusive possession of the right-of-way at the time of the erection of the gate or at any time thereafter. According to all evidence in the case, Mr. Weaver exercised some sort of possession over the easement even after the gate was erected, for he did frequently use the easement by at least driving up to the gate, and according to some evidence, by from time-to-time actually passing through the gate into his own property. There was further evidence that Mr. Lewis had used the easement and that Chester DeNoone had traveled over the easement prior to the time Mr. Largent had purchased the easement.

In the absence of exclusive possession by the party who is claiming adverse possession, *Somon v. Murphy Fabrication and Erection Company, id.,* indicates that there can be no adverse possession.

In view of this, this Court believes that the trial court also erred in concluding that the easement was extinguished by adverse possession.

■ The Court notes that another assignment of error is that Dennis G. Largent, II, was not named as a party defendant and that he was, in effect, an indispensable party since his rights were affected by the ruling of the circuit court relating to extinguishment of the easement. The DeNoones claim that since he was in indispensable party, the Court's ruling relating to extinguishment of the easement is null and void.

Recently in Syllabus Point 2 of *O'Daniels v. City of Charleston*, 200 W.Va. 711, 490 S.E.2d 800 (1997), the Court stated:

When a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void.

In the present case, Dennis G. Largent, II, retained a right to use the right-of-way providing access to what became the DeNoone property when he conveyed the right-of-way to Patricia DeNoone. He thus had, and has, a real property interest in the right-of-way which was potentially affected by the court's ruling that the use of the easement was extinguished insofar as vehicular traffic was concerned.

In view of the fact that Mr. Largent retained a right to use the right-of-way in issue in this case, and in view of the further fact that the issue in the case was the scope and extent of the rights involved in that easement, this Court believes that Mr. Largent, was, in fact, an indispensable party, and under the rule set out in *O'Daniels v. City of Charleston, id.*, he should have been joined as a party defendant.

The Court notes that in addition to claiming that the easement was extinguished, William Grant Walls and the other parties who instituted this action, claimed that the right-of-way was not 30 feet wide and requested a ruling from the Court that the right-of-way could not be used for ingress or egress to a subdivision since the regulations relating to subdivisions in Hampshire County require that an easement be at least 30 feet wide to provide ingress and egress from a subdivision.

The Court finds that the trial court did not address this issue, even though there was conflicting evidence as to the width of the easement. That conflicting evidence, on the one hand, consists of surveys showing that the easement was 30 feet wide, whereas, on the other hand, other evidence suggested that the easement was no wider than two vehicle tracks, or less than 30 feet wide.

As has previously been stated, the Court has concluded that the trial court erred in finding that the easement was extinguished either by abandonment or adverse possession. In view of this, the Court believes that the circuit court's ruling that the easement was extinguished must be reversed. However, since there were additional questions in the case which were unresolved by the court's findings and final order, this Court believes that the case must be remanded for such further development as may be necessary and decision of the question of whether the right-of-way, as historically established, was appropriately wide to allow ingress and egress to a subdivision under the ordinances. Since, in the Court's view, Dennis G. Largent, II, is an indispensable party, the Court also believes that upon remand, he should be joined as a party defendant and should be afforded an opportunity to address the question of the width of the right-of-way.

Finally, the Court notes that the DeNoones challenge the award of attorney fees and costs in this case. In view of the fact that the case should be remanded, the Court believes that upon remand the circuit court should readdress the attorney fee and cost questions after resolution of the remaining issues in the case.

For the reasons stated, the judgment of the Circuit Court of Hampshire County is reversed, and this case is remanded for further development.

Reversed and remanded.