# CHARLESTON.

### EDWARDS v. MOUNDSVILLE LAND CO.

Submitted June 10, 1904—Decided October 18, 1904.

1. TOWN LOTS—*Streets and Alleys—Easement.*

    When lands are laid off into lots, streets, and alleys, and a map plat thereof is made, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets and alleys necessary to the enjoyment and value of such lots. *Cook* v. *Totten*, 49 W. Va. 177. (p. 48).

2. LAND OWNER—*Streets and Alleys.*

    When such land owner refuses to such lot owners the use of such streets and alleys, a court of equity will compel him to specifically perform his contract, and require him to open such streets and alleys for the benefit of such lot owners, although the dedication to public uses of such streets and alleys has not been accepted by the public authorities. *Idem.* (p. 49).

Appeal from Circuit Court, Marshall County.

Action by Imogene Edwards and others against the Moundsville Land Company and others. Decree for defendants, and plaintiffs appeal.

*Reversed.*

J. HOWARD HOLT, for appellants.

J. A. EWING and HENRY M. RUSSELL, for appellees.

MILLER, JUDGE:

The Moundsville Mining and Manfacturing Company, a corporation formed under the laws of West Virginia, became the

owner of a large tract of land, adjoining the town of Mounds-ville. It acquired the land for the purpose of laying it out into building lots, streets and alleys, with the expectation that it would afterwards become a part of the town. The object of the company was to sell the building lots, as it was authorized to do by its charter. The property was laid out, and a plat thereof was made, showing the squares, lots, avenues, streets, alleys, and public roads upon and over it. This plat was not recorded in the office of the clerk of the county court, but was published and distributed; and a public sale of many of the lots so laid out was made at a time when the plat indicated the plan and method of the subdivision of the property, this being the only plat of the land at that time.

William L. Edwards bought a portion of the land delineated on this plat as section 41, the plat having been extensively circulated before, and being present on the day of sale. Several other parts of the property were sold at, or near the same time, to various purchasers. There was laid down on this plat an avenue, one hundred feet wide, called "Arlington Place," running diagonally across the greater portion of the property. As shown, it had in it at intervals, circles of much greater width than itself. This avenue was located in such a way that it cut diagonally through a number of the squares into which the property had been divided, leaving from the intersected squares, triangular pieces containing irregularly shaped lots.

The deed to Edwards bears date on the 27th day of July, 1894, and was executed by C. A. Weaver, as President of the Moundsville Mining and Manufacturing Company, is without reservation as to the avenues, streets and alleys, and describes the property conveyed thereby as a "lot or parcel of land situated in the Moundsville Mining and Manufacturing Company's Addition to the City of Moundsville, in the county of Marshall and State of West Virginia, to-wit: Beginning at the intersection of the southern line of Waynesburg Avenue with the eastern line of Poplar Avenue on the said M. M. & M. Co.'s plat, thence with Waynesburg Avenue N. 71 deg. 50' E. 225 feet to the western line of Pine Avenue, thence with the western line of Pine Avenue S. 18 deg. 10' E. 341.5 feet to the northern line of Center Street, thence with the northern line of Center Street S. 71 deg. 50' W. 244 feet to Arlington Place, thence with the line of Arlington Place N. 33 deg. 38' W. 17.79 feet to

the eastern line of Poplar Avenue, thence with the eastern line of Poplar Avenue N. 18 deg. 10' W. 327.52 feet to the beginning, containing 87,110.5 sq. ft. equal two (2) acres, known. as section 41 on plat of said Addition." These objects of description are shown on the plat above mentioned.

There are several other deeds in the record, executed by the same company to different parties, for lots and sections, in all of which last mentioned deeds, the property conveyed is referred to as being "on the plat of said addition, now on record in the office of the clerk of the county court of said county." The plat, referred to never was so recorded, but the evidence shows that it had then been lodged in that office and space reserved by the clerk in the deed book for its recordation.

After the aforesaid transactions, the unsold portions of the land became the property of the Moundsville Land Company, another corporation, composed principally of the stockholders of the first mentioned corporation, and formed and organized therefrom, with others. The last named company then made a new plat, eliminated Arlington Place, and laid out the sections and squares, intersected by it, into regularly shaped lots. The last plat was duly recorded; and it is stated in the briefs for appellee, that much of the property shown thereon has since been sold to various purchasers with reference to the new plan, or second plat; that some of the lots or parts thereof so sold are included in what was Arlington Place, as located on the first plat; and have had houses erected thereon by the purchasers.

At the May Rules, 1898, Imogene Edwards, widow, and Ellen. Edwards, Howard Edwards, George Edwards and Lindsay Edwards, the children of said William L. Edwards, then deceased, filed their bill of complaint in the circuit court of Marshall county, against The Moundsville Land Company, The Moundsville Mining and Manufacturing Company, and others, in which bill it is, among other things, alleged that said William L. Edwards died testate on the 7th day of June, 1896, having devised by his last will, to said Imogene Edwards, for life, or during her widowhood, then to his children above named, the property occupied by him at the time of his death as a residence, being the same land conveyed to him by the second named company.

It is further alleged that Arlington Place is a street or highway, one hundred feet in width at all points, bounding on, and extending by, the property of plaintiffs; that said section 41.

was and is shown on said first plat; and that said Arlington Place bounding the plaintiffs' property as shown on said first plat, was, at the time of said sale and conveyance of section forty-one, to the said William L. Edwards, a public highway and thoroughfare, given and dedicated by the Moundsville Mining and Manufacturing Company to public use; and that the purchase by Edwards of said section 41 from said company was made particularly with and by reference to the streets and ways, including Arlington Place, delineated on said plat, all of which ways were, by the said Moundsville Mining and Manufacturing Company, dedicated to public use. Plaintiffs further allege that said William L. Edwards was induced by said company to rely upon said plat; that the said company promised Edwards to record the same in the deed books of Marshall county; that the public dedication of Arlington Place was one of the moving and principal considerations held out by the company to Edwards for the purchase of section 41, bounding on said thoroughfare; that upon this inducement, and relying upon said public dedication of way, Edwards purchased section 41; and that said first plat is the one referred to in the deed to Erwards. Plaintiffs then allege that said Land Company has closed Arlington Place, and has sold, and is selling, the land on which it was located; and that irreparable damage will be done to their property thereby. Plaintiffs pray that the defendant companies be enjoined and restrained from closing Arlington Place, or any part thereof, or the circles appurtenant thereto; that the same may remain open for the use of the plaintiffs and of the public generally; and that the land company be compelled to record said first plat as the true plat of said Addition to Moundsville.

The defendant, The Moundsville Land Company, filed its demurrer and answer, in which answer it denies all the material allegations in the bill; and alleges that the second plat was made by it, and portions of Arlington Place eliminated as aforesaid, with the knowledge and consent of Edwards, and most of the other persons, who had bought sections and lots, before the making of the new or second plat; that respondent made public sales of said property, including parts of Arlington Place, in the presence of Edwards, and without objection from him; and that the new plan, under the second plat, is an advantage to section 41, and to the owners thereof, instead of a damage there-

to. Respondent further claims that said plaintiffs are estopped in this suit by the conduct of their testator. Depositions were taken and filed in the cause by both plaintiffs and defendants, and on the 10th day of March, 1900, the cause was heard by the court, upon the process and return thereon; the plaintiffs' bill, the said answer, and general replication thereto, and the depositions filed and exhibits therewith; whereupon the relief prayed for was refused, and the bill dismissed at the costs of the plaintiffs. From this decree, the plaintiffs obtained an appeal.

The record proves that the first plat had been distributed prior to the time of the sale of section 41 to Edwards, and that he had received and examined the same. It also satisfactorily appears that it was and is the plat, referred to in the deed to Edwards, and in other deeds exhibited with the record; and that said deeds, including the deed to Edwards for section 41, were executed with reference thereto, but the legal evidence does not establish the material allegations of defendants' answer.

The right in and to the avenues, streets and alleys, laid down on said first plat, which passed to Edwards by his deed for section 41, was and is the servitude thereon, necessary for the proper use and enjoyment of his property. This carries with it, and includes, the right to use any of the avenues, streets or alleys delineated on the plat so far as may be necessary, in going from his property to any of the other lots or sections described on the plat, and also to the public highways with which any of the streets connect, and in returning therefrom.

The first map or plat of the addition, with reference to which it is claimed Edwards purchased section No. 41, shows that Arlington Place included, as parts thereof, Tunlaw Circle, Elmore Circle and Pyrmont Circle; is crossed by Walnut, Maple, Mulberry, Olive, Poplar, Pine, Sycamore and Thorn Avenues; and is intersected by Elm, Hickory and Kingwood Avenues. By this plat, section No. 41 is bounded by Poplar, Waynesburg and Pine Avenues, Center Street and Arlington Place.

Arlington Place, as laid down, covers and includes, a triangular piece of ground, bounded by section 41, 17.79 feet; by Center Street, 12.5 feet; and by Poplar Avenue, 12.5 feet. It will thus be seen that 17.79 feet of the front of plaintiffs' lot is and will be cut off from any street or avenue by the triangular lot as above described. About this, there is no dispute.

Plaintiffs are thus deprived not only of the use and benefit directly of 17.79 feet of street frontage, but also of the whole of Arlington Place, and its avenue and street connections. There is some dispute as to whether or not Arlington Place was ever legally dedicated to the public, and much evidence was taken and filed upon that question, but this seems to be immaterial. The case must be determined on the legal rights of the plaintiffs. The language of JUDGE DENT in *Cook* v. *Totten,* 49 W. Va. 177, *et. seq.,* is adopted as conclusive of this case: "The law seems to be settled that 'It is not only those who buy land or lots abutting on a street or road laid out on a map or plat, that have a right to insist upon the opening of the street or road; but where streets and roads are marked on a plat and lots are bought and sold with reference to the plat or map, all who buy with reference to the general plan or scheme disclosed by the plat or map acquire a right in all the public ways designated thereon, and may force the dedication. The plan or scheme indicated on the map or plat is regarded as a unity, and it is presumed as it well may be, that the public ways add value to all the lots embraced in the general scheme or plan, certainly as every one knows, lots with convenient cross streets are of more value than those without, and it is fair to presume that the original owner would not have donated land for public ways unless it gave value to the lots. So, too, it is just to presume that the purchasers paid the added value, and the donor ought not therefore to be permitted to take it from them by revoking part of his dedication.' A contrary holding prevails in some jurisdictions, which limit the purchaser to the right of having abutting streets opened to the first cross streets. Elliott on Streets and Roads (2d Ed.) 132. The unity doctrine of the plat or plan is decidedly the most equitable, for the reason that the opening of remote streets may render the purchased lot more accessible and more valuable by creating a more direct and easy way thereto, while the opening of comparatively near streets might be of none or little value to the lot in question. In the case of *Indianapolis* v. *Kingsburg,* 101 Ind. 200, it is held that according to the great weight of judicial opinion the lot purchaser is entitled to the use of all the streets and ways, near or remote, as laid down on the plat by which he purchases. * * * * This being the law, the land owner when he lays off his land into lots, streets and alleys, and has the same platted

and then sells lots with reference to the map thereof, must be presumed to know that he thereby dedicates such streets and alleys to the use of such lot owners and the public, and the rights of the lot owner are not to wait in abeyance until the public authorities see fit to accept and take charge of such streets and alleys, but he is at once entitled to have all such streets and alleys opened for his use, necessary to the enjoyment of his property. All such streets and alleys must be considered as appurtenant thereto, for they begin at his property and extend in a network all over the land platted.   *   *   *   *. While the public right to use and control depends on the acceptance of the dedication to public uses, the private right of purchasers is acquired at the time of the purchase and may precede the public's right. Elliott Streets and Roads (2d Ed.) 128, section 118. The public authorities may never accept the dedication, and yet the lot owners would be entitled to use the streets and alleys from the very time of their purchase, and the land owner cannot exclude them from this right. Having sold the lots according to the plat, he must accord to the purchasers the use of the streets and ways as shown thereon. The deeds involved in the present controversy each convey 'a certain lot of land in the town of Kimball, McDowell county, West Virginia, and known in the plan of said town as surveyed by W. C. Brooke, civil engineer, which said plan is recorded in the McDowell county court clerks' office,' thus making the plan and survey a part of the conveyance, as much so as if fully set out in such deeds. The plaintiff having thereby acquired a full right to the use of the streets and alleys by purchase, the easement therein passing as appurtenant to the lot to whose enjoyment they are necessary, as the law affords him no complete remedy, may appeal to a court of equity to enforce such right for his benefit. *Boyd* v. *Woolwine,* 40 W. Va. 382. Having purchased his lot as part of the plan or addition to a town, he becomes interested in all the streets and alleys thereof for the reason that the value of his lot, together with its proper use and enjoyment is dependent thereon, and if the land owner is permitted to close up one street, he may close them all up, except those immediately abutting the purchaser's lot and thus render it valueless, even though the price paid was in consideration of the dedication of the whole plan to the purpose and uses of a

town. A single town lot is of little value by itself in the center or on the edge of a large tract of land. It is only worth so much per acre as the land is worth. The value of each town lot is dependent on the value and improvements of all the other lots, and of the streets and alleys open to public uses included in the same general plan or plat. Each deed in this case not only conveyed the lots according to the plan, but also conveyed all the appurtances belonging thereto, which necessarily includes the easement in all the streets and alleys of the plan necessary to the use, enjoyment and value of the lots and though the public never accept the same, the lot owner is entitled to the right to the proper enjoyment thereof. In such a case as this plaintiff cannot be compelled to seek redress at law in an action for damages, but he has the right to have his contract specifically enforced. Nor can he be compelled to await until the public authorities accept the dedication of the streets and alleys, which may never occur, especially if the land owner is permitted to keep them closed up, and refuses a further sale of lots."

For the reasons stated, the circuit court erred in its decree entered in the cause on the 10th day of March, 1900, wherein it refused to the plaintiffs the relief prayed for, and dismissed their bill with costs to the defendant land company. We are of opinion that the court should have granted to the plaintiffs the prayer of their bill, and should have also issued a mandatory injunction, if asked for by them, to compel the defendant, The Moundsville Land Company, to open for public use, Arlington Place, as laid down on the first plat of the Addition to Moundsville, a copy of which is filed with plaintiffs' bill as Exhibit "B."

We, therefore, reverse and annul the decree aforesaid, and remand the cause to the circuit court of Marshall county for other and further proceedings to be had therein in accordance with this opinion, and according to the rules and principles governing courts of equity.

*Reversed.*