# CHARLESTON.

JAMES M. MASON, JR., v. C. F. WALL.

Submitted May 1, 1924.    Decided May 20, 1924.

EASEMENTS—*Owner of Lots in Abandoned Platted Town May not Compel Removal of Fencing not Interfering with Reasonable Access.*

> Where a proposed town has been platted and lots sold with reference to the plat, but soon after the inception of the project and before the opening of the streets or alleys the plan for the town fails; and thereafter, during a period of nearly thirty years the land comprising the lots, streets and alleys is fenced and · used for farming purposes; the owner of lots on the plat, while the scheme for the town thus remains dormant, may not by mandatory injunction compel the removal of fencing on the platted land which does not interfere with reasonable access to his property.

Appeal from Circuit Court, Jefferson County.

Action by James M. Mason, Jr., against C. F. Wall. From a judgment for plaintiff, defendant appeals.

*Reversed and remanded.*

*Geo. M. Beltzhoover, Jr.,* for appellant.
*James M. Mason,* for appellee.

LITZ, JUDGE:

Defendant appeals from a decree requiring him to remove certain fencing, enclosing a boundary of land, in so far as the same occupies any of the streets and alleys shown on the plat of a ''paper'' city in Jefferson county. The bill alleges that the Charles Town Mining, Manufacturing & Improvement Company, a corporation, owning a tract of several hundred acres of land in that county, subdivided it, on a plat, into ''blocks and lots, separated by streets and alleys, Fairfax Boulevard, and circles'', and proceeded to sell and convey lots with reference to the plat, which was recorded May 5, 1891, in the county court clerk's office of said county; and by deed of January 18, 1894, granted to R. O. Allen Lots

13 and 30 in Block 134, and Lot 30 in Block 160, shown on the plat; that R. O. Allen having died in the year 1918, his executor, A. S. Allen, thereafter, by deed dated May 2, 1919, conveyed these lots to plaintiff for a recited consideration of $25.00.

It is alleged further that the defendant has built and is now maintaining a fence across the streets and alleys shown on the said plat, which fence and other fences along the right-of-way of the Norfolk & Western Railway Company, the southern boundary line of Lot 1 in Block 144, on the plat, and the border of an adjoining farm, connect so as to enclose a large portion of the platted lands, including "Fairfax Boulevard", and Lot 30 in Block 160, and part of Lot 30 in Block 134, owned by the plaintiff; that notwithstanding plaintiff's objection, the defendant continues to maintain the fence he has constructed and to pasture the land inside the enclosure with horses, cows and sheep belonging to himself and others; by reason whereof the plaintiff is unable to rent or sell his lots.

The bill prays for a mandatory injunction requiring the defendant to remove the fence from the streets, alleys and Fairfax Boulevard, shown on the plat; and for general relief.

The defendant demurred, and filed an original and amended answer to the bill. The answers aver that on or about May 30, 1890, during a "boom" period, Charles Town Mining, Manufacturing & Improvement Company, a West Virginia corporation, was organized for the purpose of promoting speculative enterprise, and on November 4, 1890, acquired from James M. Ranson a tract of farm land in Jefferson county containing 333 acres, which it proceeded to lay out into a city on paper, consisting of an elaborate arrangement of lots, blocks, squares, villa sites, circles, parks and boulevards, intersected by miles of prospective avenues, streets and alleys. A belt line railroad extending east and west through the property, divides the platted land into two practically equal parts.

The answers aver further that while the company sold a number of lots in the proposed city, within a year or two after the inception of the scheme, the boom collapsed and the promoting corporation became insolvent; that creditors'

suits against the company, in which the property, including
streets and alleys, was sold, immediately followed; one of
such suits being brought in the year 1894 by the estate of
James M. Ranson to recover the unpaid purchase money for
the land; that even prior to these suits or the insolvency of
the corporation, its officers realizing that the venture was
hopeless, fenced in and rented for agricultural purposes por-
tions of the property without regard to the imaginary streets
and alleys; that the former officers of the defunct corporation
now own many of these streets and alleys under deeds from
the corporation and conveyances made under sales in the
creditors' suits, and have held possession thereof, under en-
closures, for many years; that during the past twenty years
the lots have been sold annually at tax sales for the non-pay-
ment of the taxes due thereon, and for a long period defendant
has bought at such sales ninety per cent. of the lots so sold,
paying on an average of not more than $2.50 each, until now
he owns between 500 and 1000 of these lots, located in various
parts of the platted land, but principally north of the belt
line railroad and within the enclosed area described in the
bill; that for fifteen years, without interference, he has had
and held possession of said boundary, by enclosing, grazing
and farming the same; and now owns from eighty-five to
ninety per cent. of the lots therein; that no part of the platted
land, except a small portion occupied by the village of Ranson,
was ever developed as a town site, and the division north of
the belt line railroad, within which the area occupied by de-
fendant lies, for the most part is taken up by fields and
enclosures used for farming purposes only; that the proposed
streets and alleys were never used, opened or recognized, and
exists only on paper; that R. P. Chew, former president of the
Charles Town Mining, Manufacturing & Improvement Com-
pany, owns a large area of the land, including streets and
alleys, (adjacent to the boundary occupied by defendant),
which he has had under fence and used for farming purposes
during many years; and that the original plan to develop
the platted land as a town site never matured and has long
since been abandoned. Other averments are contained in the
answers showing the early failure and abandonment of the
plan for the city, and the long continued use by the lot

owners of the lots and streets and alleys for farming purposes.

The circuit court sustained exceptions to the answers and awarded a mandatory injunction as prayed for in the bill. This ruling was made apparently upon the theory that the sale and conveyance by Charles Town Mining, Manufacturing & Development Company of the lots owned by plaintiff passed to the purchaser, and his successors, not only an irrevocable easement over the proposed streets and alleys, but the further right under all conditions to enjoin perpetually their use for other purposes. Hence the court discarded as immaterial the averments in the answers showing thirty years abandonment of the scheme to develop this "paper" city and the farming of the platted land, without regard to streets and alleys, during all that period. Such conception is opposed to reason and principle.

It is true, under the general rule announced in *Cook* v. *Totten,* 49 W. Va. 177, and *Edwards* v. *Land Company,* 56 W. Va. 43, that where lands are subdivided on a plat into lots, streets and alleys, all lots sold and conveyed by reference to the plat without reservation carry with them as appurtenant thereto the right to the use of the easement in the streets and alleys necessary to the enjoyment and value of the lots; but in each of those cases the unobstructed use of the streets and alleys there involved, in an actual growing town, was necessary to the enjoyment and value of the lots for city purposes. There is no claim here that the plaintiff's lots are now, or will ever become, city property. Upon what legal maxim or principle, then, could a court of equity by injunctive process commit to undisturbed waste the areas marking the many imaginary streets and alleys, and thus destroy their use and greatly impair the value of the lands comprising the lots, without benefit to the plaintiff?

The right of easement in the streets and alleys of a proposed town, passing to a lot owner, may be lost by abandonment where the plan for the town has failed. McQuillin Mun. Corp., secs. 1588, 1594; *Chapman* v. *Lake,* 116 Va. 364; *Glasgow* v. *Mathews,* 106 Va. 14; *Dickinson* v. *Arkansas City Improvement Co.,* 77 Ark, 570, 92 S. W. 21, 113 Am. St. Rep. 170; *Chambers* v. *Roanoke, etc. Asso.,* 111 Va. 254, 68 S. E. 980; *State* v. *Finley,* 150 N. C. 726, 64 S. E. 772.

Whether the answers show such case need not be determined. We think, however, it sufficiently appears that the plaintiff's property for the present at least, is useful only as so much farming land. This is practically conceded by plaintiff's brief wherein it is stated that the boundary enclosed by defendant has an annual rental value of $1500.00. The small price paid by plaintiff for his three lots is strong proof they have no value as town lots.

We are of opinion that the circuit court erred in sustaining exceptions to defendant's answers and awarding a mandatory injunction clearing of obstructions the supposed streets and alleys merely because they had been platted on a map and lots sold with reference thereto. The plaintiff, however, should be given such reasonable access to his property as may be necessary to its value and enjoyment.

The decree of the circuit court, will, therefore, be reversed, and the cause remanded to be proceeded with in accordance with this decision.

*Reversed and remanded.*