E. E. Deitz, *et als. v.* W. S. Johnson

(No. 8957)

Submitted October 25, 1939. Decided December 12, 1939.

*W. G. Brown*, for appellants.
*Wolverton & Callaghan*, for appellee.

Fox, President:

The appellants, who were the plaintiffs below and the owners of certain real estate situated in what is known as

Richwood Heights, in the City of Richwood, complain of a decree of the circuit court of Nicholas County, entered on the 15th day of November, 1938, in which their prayer for the removal of obstructions to certain streets and alleys in Richwood Heights was denied, and their suit dismissed. The sole defendant is W. S. Johnson, the owner of a number of lots and parcels of land in Richwood Heights under a conveyance from John M. Wolverton and wife, dated the 14th day of April, 1925, and who, it is contended, in violation of the rights of the appellants, enclosed certain streets and alleys affecting their property.

On June 26, 1899, William A. Shawver conveyed to John D. Alderson, Joseph A. Alderson and A. A. Hamilton a tract of 150 acres of land near Richwood, from which tract the said grantees conveyed 42 acres to Gordon L. Umbarger on June 13, 1902. On April 15, 1902, Hamilton conveyed his interest in the remaining portion of the 150 acres to Joseph A. Alderson and later, on December 26, 1906, John D. Alderson conveyed his interest therein to Joseph A. Alderson.

In the meantime in January, 1903, the then owners of the remainder of the Shawver tract subdivided a portion thereof into town lots and made up a plat thereof which was recorded on February 16, 1906. According to the recorded plat, there were 97½ acres in the entire tract remaining after the conveyance to Umbarger. The plat shows the outer boundaries of the 97½ acres, a tract of 5 acres therein conveyed to George W. McGraw on January 9, 1903, and the forty-three town lots, eight of which, not herein involved, were located on the west side of the county road, designated on the plat as Alderson Avenue. Fronting on the east side of said Avenue thirty-five lots were laid out, numbering one to thirty-five, inclusive, and which will be hereinafter referred to as "the subdivision". It appears from this plat that between the south boundary of the subdivision and the outer boundary of the entire tract, bordering on lots 1, 2, 5 to 14, inclusive, there was an alley twenty feet wide. Extending east from Alderson Avenue through the subdivision, two parallel thirty-foot

streets, Hamilton Street and George Street, were laid out. The plat does not show any alleys or streets north or east of the subdivision.

On September 25, 1904, the Aldersons conveyed to M. A. Dean a tract of 3-7/16 acres, immediately north of the subdivision, the description of which, contained in the deed, shows that a strip of land, ten feet in width, between the Dean tract and the subdivision was not conveyed, and it was referred to as "an alley ten feet wide between the said town lots and this tract." By deeds dated February 25, 1905 and July 12, 1905, there were conveyed to I. R. Garrett and Letta L. Criswell, respectively, tracts of three acres and 1.3 acres situated east of the subdivision, which deeds show that the western boundary of the tracts conveyed thereby stops twenty feet short of the eastern line of the lots in the subdivision, leaving a strip of land twenty feet in width along the entire eastern boundary of the subdivision lots, which strip connected with the alley running along the southern boundary. On February 4, 1911, Joseph A. Alderson conveyed to C. E. Landacre a lot of one acre and 134 square rods, located south of the McGraw five-acre tract and north of the Criswell tract of 1.3 acres, and which bounded on the twenty-foot strip between the subdivision and the Criswell and Garrett tracts. Along the eastern boundary of the McGraw, Landacre, Criswell and Garrett tracts, there was, according to the evidence, a street laid out which was intended to afford an outlet from these tracts to the county road, but there is also testimony that this outlet is inadequate. The balance of the 97½ acres was cut up into acreage lots, outlet therefor being provided either through the county road, which runs through the entire tract, or the street at the east of the tract, except as to one acre conveyed to one Miles, the outlet to which appears to be an alley south of the eight lots on the west side of Alderson Avenue.

This suit was instituted by E. E. Deitz and the devisees under the will of Clownie L. Alvis, who are the owners of the McGraw tract of five acres and the Landacre tract

of one acre and 134 square rods. Later, Cornelia Vredenberg filed her petition in the cause and was made a party, presumably as a plaintiff, on account of her ownership of Lots Nos. 11, 12, 13, 14, 16 and 17 in the said subdivision. Of these lots, 11, 12, 13 and 14 are bounded by Hamilton Street on the north, the twenty-foot strip of land to the east of the subdivision, and the twenty-foot alley at the south side thereof; Lots 16 and 17 are bounded on the south by Hamilton Street and on the north by George Street; Lot 10, owned by Deitz, adjoins Lot 11 on the west and is bounded by Hamilton Street and the south alley, and was acquired by him by deed on December 27, 1913. The lots owned by Cornelia Vredenberg were conveyed to her by Carrie Fitzwater and husband, by deed dated September 5, 1933; Mrs. Fitzwater, under the names of Susan C., Caroline and Carrie, acquired title to Lots Nos. 12, 13 and 14 on the 11th of December, 1905, Lot 17 on December 6, 1909, Lot 16 on March 5, 1912, and Lot 11 on July 12, 1919. All of the lots and parcels mentioned above, except Nos. 10 and 16, were conveyed by the original owners of the 97½ acres prior to the conveyance to Laura V. Wolverton, under whom the defendant claims.

On April 15, 1910, Joseph A. Alderson conveyed to Laura V. Wolverton the following lots in said subdivision: Lots Nos. 1 to 9, inclusive, No. 19, and Lots Nos. 21 to 35, inclusive, except Lot No. 32. Later, there was acquired either by Laura V. Wolverton or by her husband, John M. Wolverton, the 3-7/16 acre lot known as the M. A. Dean tract, north of the subdivision, and also a small parcel of the McGraw five acres and two parcels lying south of the subdivision conveyed by J. W. Oakford, one a tract of 2.40 acres, and the other a tract of .78 acres. Shortly after the Wolverton purchase, the Dean tract and all of the lots purchased as aforesaid, including the Oakford property, were cleared of standing timber and fenced. This enclosure included the alley between the Dean tract and the subdivision, all of George Street, and the alley south of the subdivision. Some encroachment was made upon Hamilton Street, reducing its width for part of the

distance from thirty feet to twenty feet, and gates were, at some time, placed at the east and west ends of Hamilton Street, probably by Fitzwater in the first instance. It is clear that the action of Wolverton enclosing this property was not objected to by the Fitzwaters, who occupied the only residence located on the subdivision. It is in evidence that Fitzwater, the husband of the owner of the lots, assisted Wolverton as a laborer in doing some of the work necessary to bring about this enclosure, and in planting apple trees in George Street. At the south boundary of the subdivision a fence was first erected along the line of the Oakford property which Wolverton had acquired, leaving outside of Wolverton's enclosed boundary that part of the alley in the rear of the properties now owned by Vredenberg and Deitz. At the time of this enclosure, Lot No. 15, which borders on the alley at the east of the subdivision, was owned by M. J. Hamilton and no enclosure was made by Wolverton, either of that lot or the east alley. It appears from the evidence that Wolverton consulted Fitzwater at that time and that whatever was done with respect to enclosures was permissive in character, and there is not any evidence that as to Hamilton Street or the alley to the east and south of the subdivision his enclosure was in any way hostile. At that time George Street and the alley at the north of the subdivision had never been opened, and the closing of the same seems to have been acquiesced in and is apparently of no importance, unless it be to provide rear access to Lots 16 and 17. Up to the present time, the subdivision has been used only for general farm and orchard purposes, without regard to the platted streets and alleys, except for the use of Hamilton Street and the eastern alley.

On April 14, 1925, the Wolvertons conveyed all of their property in Richwood Heights and the Oakford property to the defendant, W. S. Johnson, including in the conveyance all of the thirty-five lots in the subdivision east of Alderson Avenue, although at the time he did not have title to the lots now owned by Vredenberg and Deitz. In addition to conveying these lots, he also conveyed, with

special warranty, "the streets and alleys between said lots", and under this conveyance Johnson claims title to all of the streets and alleys in the subdivision, although he concedes that Deitz and Vredenberg are entitled to the use of that portion of Hamilton Street which he has not enclosed, obstructed by the gates at each end thereof.

On April 27, 1910, Joseph A. Alderson conveyed to M. J. Hamilton Lots Nos. 6, 9, 15 and 18 in the said subdivision, and on August 14, 1930, the said M. J. Hamilton conveyed to W. S. Johnson Lots Nos. 15 and 17, together with a strip of land twenty feet wide located east of Lots Nos. 14, 15 and 35 of the subdivision, which is the strip heretofore referred to as the eastern alley. M. J. Hamilton did not own either Lot 17 or the twenty-foot strip she assumed to convey; but following this deed, Johnson took possession of Lot 15 and the twenty-foot strip and has prevented the use thereof by the plaintiffs, thus depriving the Alvis devisees of the access from their land to Hamilton Street; and, of course, likewise depriving the plaintiffs, Vredenberg and Deitz, of their use of the said strip of land. A bitter controversy seems to have arisen over this action on the part of Johnson, with the final result that he was notified to remove all obstructions to all of the streets and alleys of the subdivision and, upon declining to do so, this suit was instituted, which, by way of Mandatory injunction, seeks to require Johnson to remove all obstructions from the said streets and alleys. In November, 1934, after the institution of this suit, the county court of Nicholas County, upon the petition of Johnson therefor, entered an order consolidating, for purposes of taxation, the property owned by him in Richwood heights, including the Oakford tracts and all streets and alleys in the subdivision.

Two other points need to be mentioned. First, a survey of the land acquired by J. M. Wolverton from Oakford shows that the north line thereof runs approximately twenty feet south of the south tier of lots in the subdivision, leaving a space of twenty feet, corresponding to the alley claimed by the plaintiffs; and, second, the sub-

division, when first laid out, was outside the city limits of Richwood, but an extension of the boundaries now includes it; it is admitted, however, that there has not been an acceptance by the city or any public authority of the streets and alleys thereof as public highways, nor any work done thereon by any public agency.

The plaintiffs rely upon the general rule that where a party purchases lots in a subdivision which shows the existence of streets and alleys, he is entitled to the use of such streets and alleys, at least to the extent necessary to the complete enjoyment of his property. The defendant contends that the subdivision was abandoned and that the enclosures made by Wolverton and subsequent possession thereof by the defendant give him a right to his present enclosures by adverse possession as to George Street, the part of Hamilton Street enclosed, and the alleys to the north and south of the subdivision; he also contends that the conveyance of these alleys by Wolverton gives him title thereto and that the conveyance made by M. J. Hamilton gives him complete title to the strip of twenty feet at the east of the subdivision; he argues that as to this strip of land and the ten-foot strip at the north of the subdivision, there was never any conveyance by those who originally laid out the subdivision and other parcels of land conveyed out of the 97½ acre tract.

We think it very clear that in the division of the 97½ acres into smaller tracts, the owners thereof meant to leave alleys entirely surrounding the subdivision, as is evidenced by the fact that in every subsequent conveyance they located the lines of adjacent tracts so as to leave strips of land fitting into the plan of the subdivision. The leaving of these strips of land was necessary to provide rear access to the lots on the north and to provide means of access at the east side of the subdivision from Hamilton Street and George Street. In addition to this, we are confronted with the presumption that an owner of land does not, under circumstances of this character, intend to retain a narrow strip of land, of no value to himself but of great value to the lots offered for sale. *Western*

*M. & M. Co.* v. *Peytona Cannel Coal Co.*, 8 W. Va. 406; *State* v. *Herald*, 76 W. Va. 537, 85 S. E. 733; *Ahner* v. *Young*, 84 W. Va. 336, 99 S. E. 552; *Miller* v. *Railway Co.*, 93 W. Va. 257, 116 S. E. 521. At the time this subdivision was laid out, it was intended that the lots be sold as town lots, and for this purpose the alleys mentioned were of extreme importance; there is evidence that McGraw, the agent for the Aldersons, in negotiating a sale of lots to the Fitzwaters, pointed out the twenty-foot strip east of the subdivision as an alley. The fact that later on the owner of twenty-eight of the lots desired to consolidate the streets and alleys with the lots and the tracts immediately north and south thereof into one boundary did not serve to deprive those who had actually purchased lots in the subdivision of their right to the full and complete enjoyment thereof.

We do not think the defendant has acquired title to the streets and alleys of the subdivision by adverse possession. It is true that all of the north and south alleys and George Street, and a part of Hamilton Street have been enclosed for more than ten years, and that gates have been maintained on Hamilton Street for at least that period. However, these enclosures, when made by Wolverton with the acquiescence of Fitzwater, were not, in our opinion, made with any intention of depriving the owners of lots of their legal rights. We think the first indication of any hostile claim was the conveyance made by Wolverton to Johnson in 1925, when he did assume to convey not only the entire subdivision but the streets and alleys between the lots sold. Of course, no claim is made to the lots owned by plaintiffs, Vredenberg and Deitz, under this conveyance, but the form of the deed does assume to convey title to all of the streets and alleys, and, acting under this deed, when Johnson assumed the right to control the use of the streets and alleys, and especially after he acquired, under the Hamilton deed, what he contends is title to the strip at the east of the subdivision, hostile and adverse possession began. We think the case for the defendant must be tested on grounds other than

adverse possession. Adverse possession such as would operate to deprive plaintiffs of their rights must have been "hostile at its inception, adverse, actual, visible, open, notorious, exclusive, under claim of ownership, and continuous for the statutory period." *Rudolph* v. *Glendale Improvement* Co., 103 W. Va. 81, 137 S. E. 349. The evidence falls far short of establishing such character of possession.

The rule governing the rights of purchasers of lots, where there has been a platted subdivision and streets and alleys laid out, and sales made by reference thereto, has been many times stated in our decisions. In *Cook* v. *Totten*, 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792, this court held: "If a land owner lays off a tract of land into lots, streets and alleys for a town or an addition thereto, has a map made thereof and recorded, and sells lots with reference thereto without reservation, he cannot withhold from such lot purchasers the use of such streets and alleys until the dedication thereof is accepted by the public authorities, but such lot purchasers are entitled to the immediate use of all such streets and alleys necessary to the complete enjoyment of their property." This holding was upheld in *Edwards* v. *Moundsville Land Co.*, 56 W. Va. 43, 48 S. E. 754; *Griffin* v. *Richardson*, 83 W. Va. 442, 98 S. E. 523; *Rudolph* v. *Improvement Co., supra;* and these cases also hold that the acceptance of dedication by public authority is not necessary to the creation of full rights to the use of such streets and alleys by the owners of lots in the platted area. Without such acceptance, one who conveys lots in such a subdivision is estopped to deny the right to the use of such streets and alleys by purchasers of lots therein, independently of the question of the acceptance of dedication by a public authority. *Hast* v. *Railroad Co.*, 52 W. Va. 396, 44 S. E. 155. This estoppel extends to his successor in title to any of the lots in the subdivision.

It will be noted, however, that in the *Totten* case, as well as in other cases cited, the right of the purchaser of lots to the use of streets and alleys is defined to be such

right as is "necessary to the complete enjoyment of their property"; and in the Edwards case, such rights as are "necessary to the enjoyment and value of such lots." It would appear, therefore, that the right is not one which may be unreasonably exercised. In *Mason* v. *Wall*, 96 W. Va. 461, 123 S. E. 457, this court refused to compel the removal of fencing on a platted subdivision, afterwards largely abandoned, which did not interfere with reasonable access to the property of a plaintiff who had purchased lots therein. The same rule was announced in *Town of Glasgow* v. *Mathews*, 106 Va. 14, 54 S. E. 991.

We think it clear that the appellants are entitled to the use of such streets and alleys in Richwood Heights as are reasonably necessary for the full use and enjoyment of the properties owned by them and located therein, by which we mean the entire 97½ acre tract laid down on the recorded plat thereof. It only remains to determine the particular streets and alleys necessary to such use and enjoyment.

We see no reasonable necessity for the opening of the ten-foot alley between the subdivision and the Dean property; and while George Street is necessary to provide rear access to Lots 16 and 17 owned by Cornelia Vredenberg, the value of such rear access is disproportionate to the damage which would result to the owner of the other lots bordering on that street, and the defendant should be permitted to close said street.

On the other hand, we think that Hamilton Street, to its full width of thirty feet, the alley along Lots 14, 15 and 35 and to the east thereof, and the twenty-foot alley to the south of the subdivision, should be opened. The record discloses use of the Hamilton Street and the eastern alley, and the mere non-use of the south alley, without adverse possession, does not extinguish the rights of the lot owners in connection therewith. *Rudolph* v. *Improvement Co., supra*. The use of Hamilton Street and the two alleys mentioned would appear to be reasonably necessary for the enjoyment of the lots bordering thereon, and the closing of either would so affect the use and enjoyment,

and the value, of the lots owned by the appellants as to make it inequitable to permit them to be closed. Hamilton Street and the alleys mentioned should be definitely located on the ground and all enclosures affecting either should be removed.

For the purpose of taking such action as may be necessary to locate the said street and alleys on the ground, and to the end that a proper decree may be entered, this cause will be remanded to the circuit court of Nicholas County for a further proceeding not inconsistent with the views expressed in this opinion.

The decree of the circuit court of Nicholas County is reversed and the cause remanded.

*Reversed and remanded.*