A. L. HUDDLESTON *et al. v.* D. C. DEANS *et al.*

(No. 9208)

Submitted February 10, 1942. Decided April 11, 1942.

314

RILEY, JUDGE, *dissenting.*

*C. R. Summerfield,* for appellants.
*Mahan, Bacon & White,* for appellees.

LOVINS, JUDGE:

A. L. and Sallie Huddleston instituted this suit in the Circuit Court of Fayette County as property owners in Block No. 10 in the City of Montgomery against other property owners in the same block, to require defendants to remove certain designated obstructions from an alleged alley, and to perpetually enjoin the further obstruction thereof. This appeal is prosecuted to an order of the Circuit Court denying the relief prayed for and dismissing plaintiffs' bill, after submission of the cause on bill, answer and depositions.

The land here involved, as well as a greater part of the land upon which the City of Montgomery is now situated, was owned prior to 1879 by James Montgomery. In that year, at the instance of James Montgomery or his heirs, the same was laid out in about fifty blocks and several hundred lots by I. J. Settle, a civil engineer, and called Coal Valley City. On the Settle map, streets and alleys were provided so that each lot fronted on a street, with a twelve-foot alley extending through the block and in the rear of each lot. The Settle map was revised in the year 1919 by H. A. Gentry, and a copy of the revision recorded in the office of the County Clerk of Fayette County in the year 1922. The community did not expand to any great extent until about 1912, but since that time the growth thereof has been such that the original Montgomery land is now practically occupied by residences and business buildings, the population of the municipality being now about three thousand.

Block No. 10 was designated as such in the Settle and Gentry maps and is bounded, as originally, by Fourth Avenue on the North, Adams Street on the East, Third Avenue on the South, and Madison Street on the west. A map of Block No. 10 was prepared in 1937 by E. B. Roeser,

315

ADAMS SURVEY

MAP OF BLOCK 10
IN MONTGOMERY, W.VA.
SCALE 1" = 20 FT = 4-14-37
E B ROESER

3RD AVENUE

RIGHT OF WAY C.&O.R.R.

showing the same as originally laid out and the extent of the present encroachments on that portion of the block designated as the alley. A copy of the Roeser map is filed herewith, from which it will be seen that the alley runs from Madison Street to Adams Street, through the center of the block, a distance of some four hundred feet. This alley at the present time is open only at the Adams Street end, for a distance of about one hundred feet by E. P. Champe for his own purposes. The remainder thereof has never been opened or used as an alley, and photographic exhibits show the alley to be entirely closed on the Madison Street end.

Referring again to the Roeser map, Lot 4 was acquired by Sallie Huddleston in 1919 and Lot 2 by A. L. Huddleston in 1932; defendants own Lots Nos. 1, 11 and 12, and 13 and 14. Beginning with the Deans' Lot No. 1, it will be observed that the alley is obstructed by the following: three or four feet of porch on a residence constructed about 1895 by J. W. Montgomery and a stone wall built by Deans about 1917; in the rear of Lots Nos. 11 and 12, part of a building constructed about 1912 and a garage and concrete driveway placed there about ten years prior to the institution of the suit; a fruit tree, gardens, vines and shrubbery back of Lots Nos. 2, 3 and 4, the fruit tree being from twenty-five to thirty years old; a summer kitchen, hedge, lawn and shrubbery placed at the rear of the Claypool Lots Nos. 5 and 6 about 1911; and the servants' quarters and part of the residence of Annie F. Champe so constructed in 1882. The relief herein sought, if granted, would open the alley from the eastern property line of Lots Nos. 4 and 14 through to Madison Street.

The deed by which defendant Dalporto and wife acquired title to Lots Nos. 11 and 12 in 1932, refers to the lot numbers and block "as laid down on a map of the City of Montgomery * * * as prepared by the late I. J. Settle, of record in the office of the Clerk of the County Court of Fayette County", and the metes and bounds therein run to and along an alley. The deed to Deans' predecessor in title conveyed "lot number 1, in Block

10, as per Settle's map of the town of Montgomery", and the metes and bounds in the deed also run to "an alley". Defendant Sarah Dent's deed to Lots 13 and 14 and part of Lot 12, refers to Third Avenue and Madison Street and the lot numbers, with metes and bounds running to and with an alley, although there is no reference to the Settle map. W. L. Montgomery's title to Lot 3, Block 10 came to him by inheritance from his grandfather, J. W. Montgomery. There is no assertion that defendants have any record title to the portion of Block No. 10 laid off as the alley. However, reference is here made to the deeds by which defendants or their predecessors acquired title to indicate the recognition therein of the existence of the original map and the streets and alleys as laid out thereby.

Before discussing the merits of this litigation, we refer to certain procedural defects as to parties, abatement and revival and service of process. Summons commencing the suit was issued for D. C. Deans, Arnelio Dalporto, Letizia Dalporto, Sarah Dent and William Montgomery, the three defendants first named therein being personally served, as shown by the return. Sarah Dent died before the institution of this suit, but her heirs were not made parties thereto and the summons was served on her daughter.

William L. Montgomery was not personally served with process, the return stating, "he being out of the State of West Virginia, but summons left at his place of residence." Arnelio Dalporto became insane during its pendency, and it is attempted by stipulation to waive *scire facias* and revival. There is an assertion in brief of appellees that D. C. Deans died some time during the pendency thereof. This condition of the record prevents us from passing on the rights of persons who were not properly before the trial court at the time of the entry of the final decree. We find no defective procedure in the trial court as to Letizia Dalporto and therefore hold that this is sufficient for the purpose of determining a general principle which will also apply to other persons

when they or their rights are properly before the trial court, in accordance with the statutes of this State dealing with service of process, abatement and revival, and descent of title to land.

It appears that the City of Montgomery is a growing municipality and that the land within its territorial limits was laid out by the owner thereof into lots, streets and alleys. From the exhibits appearing in this record, we observe that Block No. 10 is occupied by residences and other structures. All the defendants, except William L. Montgomery, by their joint answer assert that the alley has been abandoned; that they have title to the portions thereof occupied by them by adverse possession, and that laches of plaintiffs and their predecessors in title estops the plaintiffs from showing their right.

The plaintiffs rely on the making of the Settle map; a long continued use of said map in describing parcels of land in Block 10 and the reference to the map and alley appearing in various deeds of conveyance.

There is a clear showing of an offer to dedicate the streets and alleys depicted on the Settle map. This offer, as well as the long continued acquiescence by the grantees of the dedicator, gives rise to an estoppel in favor of the lot owners, which prevents a revocation of that offer and the right to use the streets and alleys shown on the plat can not be withheld from them by other land owners who derive their title from the dedicator. *Dietz* v. *Johnson,* 121 W. Va. 711, 6 S. E. 2d 231. The municipality has not formally accepted the dedication of the streets and alleys. This case does not involve the responsibility of the city to open and keep the alley in repair, the controversy being between the alienees of the dedicator.

The Settle map was made at the instance of the owner or owners of the land; on it lots, streets, and alleys are delineated, and although the map was not recorded until the year 1922, lots in Block 10 were sold with reference thereto and without reservation. Under such circumstances the purchasers of lots in Block 10 are entitled to the immediate use of all the streets and alleys shown

thereon which are necessary for the complete enjoyment of their property. *Cook* v. *Totten,* 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792; *Edwards* v. *Moundsville Land Co.,* 56 W. Va. 43, 48 S. E. 754; *Griffin* v. *Richardson,* 83 W. Va. 442, 98 S. E. 523; *Rudolph* v. *Improvement Co.,* 103 W. Va. 81, 137 S. E. 349; *Dietz* v. *Johnson, supra.* The rights thus acquired by the lot owners are in a measure limited by necessity. *Mason* v. *Wall,* 96 W. Va. 461, 123 S. E. 457. The City of Montgomery is a populous municipality; many residences and other structures having been erected therein. In other words, it is an actual town. The rule invoked in the case of *Mason* v. *Wall, supra,* is, therefore inapplicable.

Have the plaintiffs lost their right to the use of the alley by abandonment, by adverse possession of defendants, or by laches and estoppel?

The acts of the plaintiffs or their predecessors in title, even if showing abandonment, would not extinguish that right as to other lot owners. However, the acts of the abutting lot owners seem to show a permissive use of the alley rather than any intent to abandon. The alley seems to have been occupied by persons who owned land on each side thereof, in which condition it remained until the institution of this suit. Even if the plaintiffs have the right and power to abandon the alley, which we believe they do not, the factual showing does not support a conclusion that the plaintiffs and their predecessors in title have relinquished their rights.

The defendants can not invoke laches against plaintiffs to defeat the purpose of their common grantor in dedicating the alley. Defendants are charged with knowledge of the existence of the alley. The instruments of conveyance by which they acquired their title made reference thereto or to the Settle map on which an alley is shown. The knowledge of the defendants was equal to that of the plaintiffs. Under this state of facts an estoppel does not exist as against plaintiffs and in favor of defendants. The people who placed the structures in the alley did so at their own risk and should not be heard to

complain when removal is enforced, the removal being a compliance with an easement imposed on the land by the original land owners.

That there was an intended dedication of all the streets and alleys laid down on the Settle map seems clear; improvement by public authority and user by the general public is likewise clear, such streets and alleys, in the main, having been improved and devoted to public uses. The land covered by the Settle map has been occupied to such extent that it may be said that the City of Montgomery is a congested area. Except in extraordinary cases, acceptance of a part is an acceptance of the whole. It seems clear to us that, in the circumstances of this case, there was an acceptance by public authorities of the dedication in its entirety. The case of *Point Pleasant v. Caldwell*, 87 W. Va. 277, 104 S. E. 610, is distinguishable from the instant case on factual grounds. That such acceptance may, as to certain alleys, be implied does not lessen the public's rights in the alleys affected thereby.

The right of purchasers of lots, who purchase in reliance on and with reference to a plat, are protected by our decisions. The dedication as to them, certainly to the extent of providing ingress and egress to lots so purchased, is binding, passes to successors in title and is irrevocable as against the original grantor and his successor in title, except through action of public authorities. A dedication and acceptance, express or implied, inure to the public to the same extent as to purchasers of lots. The situation thus created covers more than private rights. The public, by operation of law, becomes a party to the proposed dedication and the rights thus acquired by the public can not be destroyed by encroachments of owners of abutting property. In *Schoenberg v. O'Connor*, (N. J.) 185 A. 377, it was held that, "Right of public to appropriate dedicated street to public use at any future time when their wants or convenience may require it, attaches immediately on dedication, and lapse of time will not impair such public right." Also, "Although municipality must accept street dedicated by

property owner by formal adoption before it can be forced to repair street, acceptance is not essential to consummation of dedication so as to cut off owner from power of retraction or subject dedicated lands to public use whenever wants or convenience of public require street for that purpose." The case also holds that there need not be a grantee in existence to accept the dedication, and there is the further holding that no rights can be obtained against the public in dedicated lands by adverse possession. In *Pence* v. *Bryant*, 54 W. Va. 263, 46 S. E. 275, 277, the following language is quoted with approval: "While acceptance by formal adoption by public authorities or by public user is necessary to impose on the public the duty to keep in repair a dedicated highway or street, still that is not necessary to the consummation of the dedication so as to cut off the owner from the power of retraction, or to subject the dedication to the public use wherever, in the estimation of such authorities, the wants or convenience of the public require it for the purpose for which it was originally given." We understand these holdings to be to the effect that the public, immediately upon an offer of dedication, becomes vested with an interest in the property affected thereby, of which it can take advantage at any time, and that such rights may not be taken away from the public by adverse possession.

The strict rule which we have adopted may not apply in case there is a substantial abandonment of the plat. In such cases the public interest may disappear, leaving only the rights of purchasers to unimpeded access to their property. No such situation is here, and, therefore, we need not further discuss the law applicable thereto. Here the purposes of the original plan have been fully carried out, and the necessity of adhering to the unity rule, strongly upheld by the decisions of this Court, seems clear.

Failure of the City of Montgomery to accept an offer of dedication of the alley and require that it be opened does not bar the public's right therein. *Ralston* v. *Weston*, 46 W. Va. 544, 33 S. E. 326, 76 Am. St. Rep. 834. There

can be no rightful permanent possession of a public way, and an injunction may be maintained by an abutting land owner to open the same. *Pence* v. *Bryant, supra.* Once it is determined that the alley is a public way, it necessarily follows that occupancy thereof or encroachment thereon does not deprive the public and the plaintiffs, who are members thereof, of the right to have the alley open throughout its length.

In accord with the principles set forth herein, we reverse the decree of the Circuit Court of Fayette County, and remand the case for further proceedings consistent herewith.

*Reversed and remanded.*

KENNA, JUDGE, concurring:

Unfortunately, due perhaps to the procedural irregularities commented upon in the main opinion, the record in this matter is rather confusing. However, I believe that the following general statement may be accepted as either admitted, proven, or subject to judicial notice by this Court under the holding in *Beasley* v. *Town of Beckley*, 28 W. Va. 81. See also Jones on Evidence (2d Ed.), sections 399 and 493.

Prior to the year 1879, James Montgomery owned in fee simple one hundred and sixty-one acres of land which is now the principal part of the Town of Montgomery, subject to prior disposition of several small parcels within that boundary which likely formed a part of an unincorporated settlement called Coal Valley. In this record there is no date fixed concerning the time of James Montgomery's death, but a little prior to the year 1879, his heirs at law or devisees, the record not being clear as to which, employed a civil engineer named I. J. Settle, who, based upon an actual survey, prepared a plat of the boundary referred to, showing it sub-divided into lots, blocks, streets and alleys, and filed an authenticated copy of the plat in the office referred to as the office of the town recorder of the village of Coal Valley, turning the

original over to the heirs at law of James Montgomery. Using the Settle plat as a means of locating individual lots offered for sale and as a basis for describing the property conveyed by their deeds, the heirs of James Montgomery proceeded to dispose of quite a number of the lots shown upon the plat, not, however, including any directly involved in this proceeding. In the year 1891, under chapter 47 of the then Code, seven petitioners filed in the Circuit Court of Fayette County their petition for a municipal charter to be issued to the Town of Montgomery, alleging that a majority of the qualified voters residing within the boundary of one hundred and sixty-one acres, a map of which accompanied the petition, favored the granting of the charter which was immediately granted. After the charter was granted to the Town of Montgomery and in the year 1895, acting pursuant to a decree of sale in what appears to have been a proceeding brought for the purpose of settling the estates of James and Amanda Montgomery, Sinclair and Gaines, special commissioners, conveyed to J. W. Montgomery, predecessor in title of A. L. Huddleston, among other lots, Lots 2 and 4 in Block 10, now owned by Huddleston, who, together with Mrs. Huddleston, are the plaintiffs in this cause. This deed describes the property conveyed as lying in the town of Montgomery and refers to the Settle map for lot and block number.

The foregoing, I believe, is an accurate resume of what I regard as the controlling and undisputed facts.

In order to determine whether the Huddlestons have the right to keep the twelve-foot alleyway open from behind their lots to Madison Street, to my mind, it becomes necessary to answer two pertinent questions: (1) What right, if any, did the Huddlestons or their predecessors in title acquire under the terms and provisions contained in the conveyance from the heirs of James Montgomery? And (2) what right, if any, are they entitled to assert based upon a claimed public dedication of the property included in the Settle plat from which their lots and all other property within the Montgomery boundary derive description?

There can be little doubt that sale of town lots from a plat showing a tract of land divided into lots, blocks, streets and alleys creates a private easement in common over the streets and alleys in which the purchasers of lots become the dominant estate and the interest retained by the owner becomes the servient estate. *Cook v. Totten,* 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792; *Edwards v. Moundsville Land Co.,* 56 W. Va. 43, 48 S. E. 754; *Rudolph v. Glendale Improvt. Co.,* 103 W. Va. 81, 137 S. E. 349; *Flanagan v. Brown,* 107 W. Va. 315, 148 S. E. 113; *Sommerville v. Carpenter,* 110 W. Va. 167, 157 S. E. 160. This is so regardless of whether the plat is recorded or is not. *Cook v. Totten,* 49 W. Va. 177, 38 S. E. 49, 87 Am. St. Rep. 792; *Edwards v. Moundsville Land Co.,* 56 W. Va. 43, 48 S. E. 754. This principle is called the "Unity Plan" to which this Court is definitely committed. 1 Elliott on Roads and Streets (4th Ed.) 157; 2 Thompson on Real Property (Perm. Ed.) 37. There is some confusion in our West Virginia cases as to whether the lot owners become vested with an easement covering the entire boundary shown by the plat or only in that part thereof which, evidently in the judgment of the court before which the matter might be presented, will permit the unhampered, free enjoyment of their individual property. Undoubtedly, they are entitled to as much of the platted easements as will assure the full enjoyment of their property, the only restriction being that the servient estate must not be overburdened. Since owners of the servient estate created the easement by the exhibition of a plan shown by a plat including the entire boundary and selling property on that basis, the preservation of the entire plan should not be construed as an uncontemplated burden upon the servient estate. I, therefore, believe that the declarations of this Court could be reconciled by restricting the use of a private easement in common so created to method of use, and not to area. However, we are not confronted with that question in this case, and, I refer to it only to note what I believe to be a slight confusion that a careful reading of the following cases will

reveal. *Cook* v. *Totten,* 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792; *Edwards* v. *Moundsville Land Co.,* 56 W. Va. 43, 48 S. E. 754; *Mason* v. *Wall,* 96 W. Va. 461, 123 S. E. 457; *Rudolph* v. *Glendale Imprvt. Co.,* 103 W. Va. 81, 137 S. E. 349; *Flanagan* v. *Brown,* 107 W. Va. 315, 148 S. E. 113; *Sommerville* v. *Carpenter,* 110 W. Va. 167, 157 S. E. 160; *Deitz* v. *Johnson,* 121 W. Va. 711, 6 S. E. 2d 231. The opinion in the *Edwards* case makes it quite plain that the purchaser of lots shown upon an unrecorded plat, generally used and referred to in the conveyance to him, acquires an easement entitling him to the use of all the streets and alleys shown upon the plat, and, therefore, syllabus one in the same case, when read in the light of the opinion, restricts only the method of use and not the area.

There can be no doubt that the owners of lots in Block 10 became owners in common of private easements appurtenant covering the use of the streets and alleys in that block when the deeds to their predecessors in title were executed, resting, as they did, upon the Settle map. The right to the use of a private easement, however, can be abandoned and ownership of the ground acquired by adverse possession, which, as I understand, is claimed by the defendants here.

However, there can be no abandonment nor adverse possession of streets and alleys dedicated to public use, so that, in my opinion, when the town of Montgomery was incorporated in 1891, accepting and approving unrestrictedly the plan of the Settle map, and began to expend public money on the streets and alleys within its boundaries, it thereby accepted the entire offered public dedication that had begun by and continued under, the general use of the Settle map. See 13 R. C. L., page 30. If that be true, we are concerned only with the possession prior to 1891 when the town of Montgomery became a corporate body, for there has been no formal surrender of the public dedication and possession does not run against it.

There is scant proof of possession during the time referred to and since, the parties to this proceeding were the holders of a common right, there must be a clear showing that the claimed possession was hostile, and not such as would inure to the benefit of all the common holders. *Higgins* v. *Suburban Imp. Co.*, 108 W. Va. 531, 151 S. E. 842. I do not think this record makes that showing. In addition, either adverse possession or abandonment constitutes an admission of the senior title and places the burden of proof clearly upon the party asserting it. I do not believe that burden has been met in this matter.

RILEY, JUDGE, dissenting:

I respectfully dissent from the reasoning contained in the majority opinion.

The Court's decision evidently turns upon the premise that the alley in question is a public way. In establishing this premise, the majority of the Court took the view that the case of *City of Point Pleasant* v. *Caldwell*, 87 W. Va. 277, 104 S. E. 610, is not in point with the instant case. But the opinion simply says that the two cases are distinguishable upon factual grounds. No effort is made to direct attention to the grounds of distinction. Personally, I have been unable to find any satisfactory ground upon which the cases may be distinguished. Here the alley in question, shown upon the Settle map, was neither used by the public nor accepted by public authority. In the *Point Pleasant* case the offer to dedicate, as here, is shown by the plat. There, as in the instant case, the acceptance of the offer to dedicate did not extend to the right-of-way sought to be declared public. It occurs to me that if the view entertained by the Court in the *Point Pleasant* case, as well as in more recent cases of *Town of Glendale* v. *Glendale Improvement Co.*, 103 W. Va. 91, 137 S. E. 353, and *State Road Commission* v. *Chesapeake & Ohio Railway Co.*, 115 W. Va. 647, 117 S. E. 530, represents sound law, for a right-of-way to become public under a dedication there must be an acceptance, either

formal or implied, of the offer to dedicate. The conclusion inevitably follows that the alley here is not a public way.

I have not overlooked the fact that earlier West Virginia cases and a number of cases in other jurisdictions have held, at least in effect, that an unequivocal offer to dedicate may make dedication complete. without acceptance. For a clear statement see note by Charles C. Wise, Jr., of the Kanawha County Bar, 41 W. Va. Law Quarterly, 293. Whether the former holdings of this Court on the question are correct is not for me to say here, because the overruling of decisions of this Court is not properly the subject-matter of a dissenting opinion.

I joined in the decision in the recent case of *Dietz* v. *Johnson,* 121 W. Va. 711, 6 S. E. 2d 231, because, as I viewed it, the Court in that case simply held that, where parties buy according to a common plat, they, in the absence of laches, estoppel, or other barring circumstance, "become entitled to such use of the streets and alleys, appearing on such plat, or provided for in subsequent allotment of the remainder of the tract, as is necessary to the complete enjoyment thereof, independently of whether or not there has been a dedication of such streets and alleys to the public and an acceptance thereof by a public authority." See Pt. 1, Syl.

It seems to me that the reason courts of equity entertain the rights which we have under consideration is not properly based upon the existence of vested property right, for such cases do not involve ownership in the right-of-way shown upon a plat with reference to which the lot owner purchased his lot, and such purchase does not give rise to a covenant running with the land. Strictly speaking, it seems to me that the rights in question should be viewed as lying within the field of adjective and not substantive law. Though a lot owner enjoys no covenant running with the land and has no vested rights in the ways shown upon the plat, he is entitled, in the absence of barring circumstances, to relief on the ground that it is inequitable for the original owner, or the other lot

owners, to narrow such enjoyment which one lot owner, from the markings and recitals appearing on the plat, was reasonably led to believe would follow a purchase according to the plat. To state the matter another way: where such lot owner is inequitably wronged, a court of equity, because its door is open to prevent the doing of inequity and there is no adequate remedy at law, will entertain a suit to protect the lot owner on the basis of an equitable covenant, mutually binding the original owner and all lot owners.

For these reasons, I find myself unable to concur in the majority opinion.